### PERRY WHITE et al. v. STATE.

No. A-2581.   Opinion Filed January 16, 1917.

(162 Pac. 232.)

1. **APPEAL AND ERROR—Verdict.** While it is well settled that this court will not disturb the verdict on account of the insufficiency of evidence when there is evidence to support it, the converse rule is equally well settled that it is not only the province, but the duty, of the court to set aside such a verdict when it is contrary to the evidence, or where there is no evidence to support it. The performance of this duty on the part of the court is the exercise of legal discretion and judgment as to the sufficiency of the evidence to overcome the legal presumption of innocence, to which every one is entitled who is put upon trial for an offense.

2. **INTOXICATING LIQUORS—Unlawful Conveyance—Evidence—Sufficiency.** See opinion for evidence held insufficient to sustain a verdict and judgment of conviction for unlawfully conveying intoxicating liquors.

*Appeal from County Court, Pottawatomie County;*
*Hal Johnson, Judge.*

Perry White and Jack Knapp were jointly convicted of conveying intoxicating liquor, and they appeal. Reversed.

*T. G. Cutlip,* for plaintiffs in error.

*R. McMillan,* Asst. Atty. Gen., for the State.

DOYLE, P. J.   The information in this case, after alleging time and venue, charges that:

"Perry White and Jack Knapp did then and there unlawfully, knowingly and willfully ship and in some way

carry whiskey from some point and place in said county and state to informer unknown to Blakemore's livery barn in the town of Asher, another place in Pottawatomie county."

Upon their trial the jury rendered a verdict of guilty as charged, and they were sentenced each to be confined for 30 days in the county jail, and to pay a fine of $50. From the judgment they appealed by filing in this court on November 18, 1915, a petition in error with case-made.

The evidence shows that the Blakemore boys found two pints and a half pint of whiskey near their father's barn in the town of Asher, and that with their father they consumed said whiskey.

The only testimony tending to connect the defendants with the whiskey in question is that of Mrs. Lila Blakemore, whose husband was the owner of the livery barn. She testified that she was acquainted with the defendants and saw them pass her house about midnight, and that she "looked out the window and saw somebody near Estes' shop, hiding something under the sidewalk near our barn, and the children found some whiskey the next day at the back of the barn."

She was then asked:

"Q. That was these defendants? A. Yes, sir; I thought they were; I am not certain."

Cross-examination:

"Q. Did you recognize Perry White and Jack Knapp as being the men who hid the whiskey at the barn or near the barn? A. Yes, sir; I thought it was them; I am not certain. Q. Will you state that these parties whom you saw were the defendants? A. I cannot state positively. I thought they were; the two men were dressed something like Knapp and White, but I will not positively swear that

they were Knapp and White. My husband went that night to the barn and got some whiskey, but these parties were gone and he had no conversation with them. I do not want to swear a lie against anybody and would not do it. I thought these parties were Knapp and White; I do not know. Q. Do you say that Knapp and White or either of them put that whiskey there? A. I can't say; somebody put it there, and I thought it was White and Knapp; I may be mistaken; I don't want to swear a lie."

Her husband was present, but did not testify.

The defendant White in his own behalf testified that he lived at Asher and worked as a day laborer; that on the night in question he was with Knapp and Mr. Blakemore in front of the Central Hotel and went home about 10 o'clock that evening; did not leave his home that night; that he did not place or assist in placing the whiskey at the barn or any other place; that this was the first time he had ever been charged with a violation of the prohibitory law.

Defendant Knapp testified that he lived across the alley from the Blakemores, and had worked about two years at the mill; that on the night in question he retired about 10 o'clock, and did not leave his residence that night after that hour; that he did not place any whiskey under the sidewalk, or near Blakemore's livery barn; that he had never been charged with a violation of the prohibitory, or any other law other than the charge in this case.

The Attorney General has very properly filed a confession of error in this case, which, after reviewing the evidence, concludes as follows: "We cannot insist upon a conviction under this proof." We are constrained to say that we do not understand how the jury could be

satisfied beyond a reasonable doubt of the guilt of the defendants upon the testimony of a witness who admittedly was very much in doubt as to their identity. While it is well settled that this court will not disturb the verdict on account of the evidence, when there is evidence to support it, the converse rule is equally well settled that it is not only the province, but the duty, of the court to set aside such a verdict when it is contrary to the evidence, or where there is no evidence to support it.

Under our Procedure Criminal (section 5937, Rev. Laws 1910) a new trial shall be granted, "When the verdict is contrary to law or evidence." Under this provision the responsibility of determining whether or not there has been adduced before the jury a sufficient amount of legal and competent evidence to render it safe to allow the verdict to stand is imposed upon the trial court in the first instance, and on appeal upon this court.

The performance of this duty on the part of the court is the exercise of legal discretion and judgment as to the sufficiency of the evidence to overcome the legal presumption of innocence to which every one is entitled who is put upon trial for an offense. *Benson v. State*, 10 Okla. Cr. 16, 133 Pac. 271.

We are of the opinion that the verdict and judgment in this case are clearly contrary to the evidence, and that the trial court erred in refusing to advise the jury to bring in a verdict of acquittal. It follows that the judgment should be and the same is hereby reversed.

ARMSTRONG and BRETT, JJ., concur.