WALTER WHEELER v. STATE.

No. A-9573. Sept. 15, 1939.
(94 P. 2d 9.)

Wm. M. Thomas, of Miami, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for the State.

DAVENPORT, J. Walter Wheeler was by information charged in the district court of Ottawa county with the crime of operating a motor vehicle while under the influence of intoxicating liquor; was tried, convicted, and his punishment fixed at a fine of $75. Motion for a new trial was filed, considered, overruled, exceptions saved; and the defendant has appealed.

The testimony on behalf of the state shows that the defendant Walter Wheeler resided in the town of Commerce, in Ottawa county, Okla.; and on the day in question, together with his stepdaughter, Ellen Maxwell, drove to the city of Miami, for the purpose of attending to some business and doing some shopping.

After the defendant had attended to his business, he went into a place where 3.2 beer was sold, and there drank some beer. From there he went to what is known as the Old King's Place, and drank some more 3.2 beer.

The stepdaughter, Ellen Maxwell, was trading, and getting things ready for them to return to their home in Commerce. The defendant told his daughter that he was

going to the barber shop to get his hair cut, which he did; and he admits being in two or more places where 3.2 beer was sold; and admits that he had two or three drinks of this beer.

The state, when the case was called for trial, asked permission of the court to indorse upon the information the names of two witnesses, Lem Algood and John Ables, which was objected to by the attorney for the defendant, which objection was overruled; and the county attorney was permitted to indorse the names of Algood and Ables on the information. The first notice that the defendant had that the county attorney desired to indorse the names of these two witnesses was about 9 o'clock on the morning before the case was called for trial that day. The defendant then moved the court to continue the case for a reasonable length of time until he could have a reasonable opportunity to secure testimony to rebut the testimony of the two witnesses indorsed on the information by order of the court.

This motion of the defendant was overruled, exceptions saved; and the court ordered the trial to proceed.

The defendant has assigned six errors alleged to have been committed by the trial court, which he believes are sufficient to warrant this court in granting him a new trial: (1) Errors of law occurring in the trial of this case, to which the plaintiff in error duly excepted. (2) Error of the court in permitting the indorsing of material witnesses on the information on the day of trial, to which plaintiff in error duly excepted. (3) Error of the court in refusing to grant motion for continuance until plaintiff in error could have reasonable time to meet testimony of the two witnesses indorsed on the information, to which the plaintiff in error excepted. (4) Error of the court in overruling defendant's demurrer to the evidence. (5) Error of the court in overruling plaintiff in error's motion for instructed verdict at the

close of all the testimony. (6) Error of law committed by the court in giving instructions 1, 2, 3, 4, 5, 6, 7, and 8, to which the plaintiff in error duly excepted.

The testimony in this case will be referred to in connection with the assignment of errors.

Elmer Hupperfelt stated that when the defendant was in his place of business in the evening about 7 or 7:30, in his opinion, the defendant was drunk.

Several witnesses testified that they saw him about or near the time of the accident, and that he was not drunk.

It is argued by the defendant that there is no evidence that he drank anything but 3.2 beer.

The defendant's truck was parked on "A" street, just west of the courthouse in the city of Miami, Okla.

One of the witnesses, testifying for the state, stated that a short while before a truck, which he thought to be the truck of the defendant, backed out from the curbing, the defendant asked him if he would drive his truck home, as he was drinking; and that he told him that he could not do it. Another one of the witnesses, who was near, claims to have seen the defendant, and that defendant told him that his little girl was in the truck; that the defendant showed evidence that he had been drinking.

Two or more witnesses, who were along "A" street and across from where the defendant's truck was parked, claim that the defendant went over to the truck, got in the truck, and backed out a bit; and then got out and pushed the truck back in to the curbing; and later on the defendant got into the truck again; and the truck was backed out into the street, and driven away south from where the truck was parked.

One of the witnesses stated clearly that the defendant said his little girl was in the truck.

The state failed to show by any testimony that the defendant was driving his truck after it left the curbing.

Some one attempts to identify the truck as it went down the street by the peculiar kind of box-bed it had on it.

Not a word of testimony was introduced by the state to show that the defendant drove the truck after it was backed out from the curb. No one attempts to identify the defendant as being the one who was driving the truck that seems to have struck some pedestrians on a street crossing south from where the defendant's truck was parked.

The state, upon the question of proving intoxication, relies upon the fact that the defendant had been drinking 3.2 beer in two or more places where this beer was sold.

The barber says that the defendant was not drunk when he cut his hair about 7 o'clock in the evening.

Some one of the state's witnesses testified that the defendant was wobbly; and that he smelled his breath, and his breath had whisky on it. No effort is made by the state to show the difference in the odor of whisky and 3.2 beer.

The defendant was not on trial for injuring any parties, but was on trial for driving a truck while under the influence of intoxicating liquor.

Lem Algood, a witness for the state, said the defendant had been drinking. "I cannot say he was intoxicated."

Earl Doin stated: "The night of February 5, 1938, between 7 and 8 o'clock, I saw the defendant at my filling station, an hour or so before I closed; and I closed at 9 o'clock. His stepdaughter was driving the truck. The defendant had had a drink or two, but I would not call him drunk."

Ellen Maxwell, the stepdaughter of the defendant, testifies that she drove the truck from where it was parked in Miami, out the street north, and drove it all the way to their home in Commerce.

The defendant testifies that she drove the truck, and that he did not have anything to do with driving it from the time it was backed out from the curb on "A" street in Miami, until they reached home. The testimony of the defendant further shows that after he and his stepdaughter got home, they filled an order for coal to Mrs. Shoemaker.

Mrs. Shoemaker testifies that Ellen Maxwell, the stepdaughter of the defendant, drove the truck when they brought the coal to her, and delivered the purchase sometime around 8 o'clock or a little bit later.

The wife of the defendant testifies that when the defendant got home, the daughter was driving the truck.

The gist of this case is, Did the defendant drive his truck from where it was parked on "A" street out of the city of Miami towards Commerce; and then was he under the influence of intoxicating liquor at the time? And did he drive the truck from Miami towards Commerce, Okla., while so intoxicated?

The only effort made by the state to show that the defendant drove the truck was where these witnesses, who were parked across the street, some distance from the defendant's truck, stated that the defendant had talked to them; and that he seemed to have been drinking, but they would not say he was drunk; that he went across the street, and got in the truck, and the truck was backed out a bit; that he then got out of the truck, and rolled it back to the curbing; and later on the truck was backed out, and drove away.

One of the witnesses says the defendant was in the truck at the time the truck drove away. He could not

say or testify whether there was any one in the cab of the truck with the defendant, leaving the impression that the defendant was driving the truck. This all occurred at night; and while there were lights on different parts of the street, the defendant was a stranger to this witness and other witnesses, who claim to have seen him on "A" street before the truck drove away. They had never seen him before, and later on identify him, and identify the defendant's truck as being a truck that had the same kind of body on it that the defendant's truck had. They did not make any close examination of the truck; and there was no proof offered as to why they happened to remember the kind of bed that it had on it at the time it drove away. The truck was driven away prior to any question that the defendant was under the influence of intoxicating liquor.

The defendant's proof is undisputed that the daughter drove the truck from "A" street, in Miami, home with the defendant in the truck. As the daughter was driving the truck, then the defendant, even though he was in the cab with the daughter and intoxicated, could not be guilty of driving the truck while under the influence of intoxicating liquor.

The conviction in this case seems to have been arrived at by the jury on the theory that because of the fact that the state proved, and the defendant admitted, that prior to the time he left Miami for Commerce in the evening between 7 and 8 or 8:30, he had been drinking some 3.2 beer. It is understood by the average person that the odor of beer and whisky is very similar.

The state relied upon the testimony offered as being sufficient to sustain a conviction. That testimony is circumstantial, and is insufficient to overcome the general presumption of innocence guaranteed to the defendant throughout the trial, until that presumption has been overcome by competent testimony.

The defendant may be guilty; but under the statutes he is entitled to a fair and impartial trial; and if convicted at all, he must be convicted by competent testimony.

Section 3062, O. S. 1931, 22 Okla. St. Ann. § 834, in part, provides that questions of fact are to be decided by the jury.

This court has repeatedly held that the jury is the exclusive judge of the weight of the evidence; and if there is a clear conflict in the evidence; or it is such that different inferences can properly be drawn from it, this determination will not be interfered with, unless it is clearly against the weight of the evidence or appears to have been influenced by passion or prejudice. Humberd v. State, 56 Okla. Cr. 23, 32 P. 2d 954; Choate v. State, 37 Okla. Cr. 314, 258 P. 360.

In Jefferson v. State, 31 Okla. Cr. 44, 236 P. 914, in the syllabus, this court stated:

"It is well settled that a verdict will not be disturbed for insufficiency of evidence when there is evidence, although it may be conflicting, from which the jury may reasonably or logically draw the conclusion of the defendant's guilt. The converse rule is also well settled that, where there is no evidence to support a verdict, or where it is of such a weak and inconclusive character that a conclusion of guilt may not reasonably be drawn from it, or there is a failure to prove some essential matter to establish the offense charged, it is the duty of the court to set aside such verdict as contrary to the evidence."

In Cude v. State, 42 Okla. Cr. 357, 276 P. 240, in the first paragraph of the syllabus, this court stated:

"To sustain a conviction, it should appear not only that the offense was committed, but the evidence inculpating the defendant should do so to a degree of certainty, transcending mere probability or strong suspicion."

In White et al. v. State, 13 Okla. Cr. 76, 162 P. 232, in the first paragraph of the syllabus, this court stated:

"While it is well settled that this court will not disturb the verdict on account of the insufficiency of evidence when there is evidence to support it, the converse rule is equally well settled that it is not only the province, but the duty, of the court to set aside such a verdict when it is contrary to the evidence, or where there is no evidence to support it. The performance of this duty on the part of the court is the exercise of legal discretion and judgment as to the sufficiency of the evidence to overcome the legal presumption of innocence, to which every one is entitled who is put upon trial for an offense." Bernard Simpson v. City of Tulsa, 67 Okla. Cr. 224, 93 P. 2d 539; Mutt Saferite v. State, 67 Okla. Cr. 229, 93 P. 2d 762.

There are other errors assigned in this case; but from the view we take of this record, it is not necessary to consider them.

After a careful examination of the record and the testimony, and considering the facts surrounding the prosecution in this case, we hold that the evidence of the state is insufficient to sustain the conviction of the defendant. There is no positive testimony on behalf of the state showing the defendant drove the truck from where it was parked on "A" street, in Miami, to his home in Commerce. On the other hand, the positive statements of the stepdaughter, Ellen Maxwell, Earl Doin, and the defendant, clearly show that the defendant did not drive the truck, but the stepdaughter, Ellen Maxwell, drove it. The statements of Mrs. Shoemaker as to the delivery of the coal to her house at a certain time, also, shows that the daughter was driving the truck at the time of the delivery of the coal.

No effort is made on behalf of the state to contradict the defendant's positive testimony and the testimony of his witnesses.

The state proved, and the defendant admitted that, he had been drinking some 3.2 beer; but as to the defendant's intoxication, the state's testimony is indefinite,

uncertain, and fails to establish facts sufficient to show that the defendant was intoxicated.

The demurrer of the defendant to the evidence of the state and his motion for an instructed verdict should have been sustained.

The evidence is insufficient to sustain the judgment against the defendant.

The case is reversed and remanded with directions to dismiss.

DOYLE, P. J., and BAREFOOT, J., concur.