## FRANK BRISTOW v. STATE.

No. A-9596. Sept. 22, 1939.

(94 P. 2d 254.)

H. M. Shirley, of Coalgate, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., for the State.

DAVENPORT, J. The defendant Frank Bristow was by information charged in the county court of Coal county, Okla., with the crime of being drunk in a public place. He was tried, convicted, and sentenced to pay a fine of $10 and cost; and has appealed.

This is a short record.

The substance of the state's testimony is that W. B. Clark, sheriff of Coal county, stated that he saw the defendant on or about the 9th day of February, 1938, at the bank in Coalgate, Okla.; that the defendant was going down the street with Mose Primer. He was staggering.

"I went to the 66 Filling Station, and came on up by the J. C. Garage, and back to Fowler's Barber Shop.

John Holson came in, and said Mose Primer was drunk. The actions of the defendant, who was across the street from me, looked like a drunk. I would not want to swear he was down in the gutter. I did not see him drinking anything."

John Holson, testifying for the state, stated that he knew Frank Bristow. He saw him ih February, 1938, at a restaurant in Coalgate. He said he was drunk.

On cross-examination the witness was asked: "Q. You say he was drunk at Gus Fleck's? A. Yes, sir."

The witness then stated:

"I had seen Frank Bristow before, but I did not know him. The defendant was not bothering me. Mose Primer was in the restaurant. Mose Primer was with another man. I only told the sheriff Mose Primer was drunk. The defendant and Mose Primer were both pretty drunk. They had not bothered me. The reason I told the sheriff that, another fellow by the name of Williams told me to tell the sheriff they were drunk. Williams wanted me to tell the sheriff they were drunk, to get them in jail. When they got them in jail, the fellow named Williams was there. Williams trades around in Indian lands. I knew Williams in Atoka. I helped him trade among the Indians."

O. C. McMillan testified that he was undersheriff on February 9, 1938; and that he saw the defendant, and arrested him. He said that the defendant was drunk.

On cross-examination the witness stated that he was staggering. He smelled liquor on his breath. The sheriff got a report that Mose Primer was down there drunk, and told the deputies to go and get him and put him in jail.

"Max and I went and got Mose; and later went back and got Frank. Max Sandman was with me when I arrested Frank. The sheriff told me that the defendant was down at the restaurant drunk. When I went into the restaurant, the defendant was starting to drink a bottle of 3.2 beer. When I took him to jail, he walked.

He did not want to go to jail; and he said he was not drunk. I think we got Mose Primer here somewhere around the courthouse; he had gone out of the restaurant. I didn't know it was a frame-up to keep the defendant Frank Bristow from making a trade with an Indian."

W. P. Powers, tesifying, stated:

"I am an undertaker in Coalgate. I saw the defendant F. E. Bristow that day when he was arrested, and just prior to his arrest. I met him between Estes' and the post office. There was an Indian talking to Bristow. I saw Mose Primer. When I talked to the defendant, just prior to his arrest, he seemed to be as usual. I took him to be sober."

On cross-examination he said:

"I stopped and talked to Bristow just a few minutes. He was on the edge of the sidewalk; and I just stopped and talked to him a few minutes. There was only one man there with him at the time."

E. Moore, testifying for the defendant, stated:

"I am an attorney at law, and have lived in Coalgate 27 years. I saw Frank Bristow the day he was arrested. I saw him over on the sidewalk, just about where Red's— File Brothers' were. I don't know just when he was arrested, but I heard he was put in about thirty or forty minutes after I met him. I would not say he was drunk. He might have had a drink. He was not drunk."

On cross-examination the witness stated he had a conversation with the defendant, and that he thought he shook hands with him. Mose Primer was pretty full. "My judgment is that the defendant had taken a drink."

On redirect examination the witness stated: "I am sure Frank Bristow was not drunk."

Alva Wheeler, testifying for the defendant, stated:

"I live at Coalgate. Q. Where do you work? A. At the Tavern. Q. Did you have occasion on the day that Frank Bristow was arrested to be in the Tavern? A. Yes, sir, I was working. There was not any one who came in

the tavern with Frank. He started to drink a bottle of beer. It was opened, but he did not drink it. The law came in, and took him away. Max and McMillan were the officers. I know a man when he is drunk or sober. Q. Was Frank Bristow drunk or sober? A. He appeared to be sober to me."

On cross-examination he said:

"My name is Alva Wheeler. I work for Gus Fleck. I was subpoenaed by Max Sandman to be a witness in the case. I did not have a conversation with him at that time; nor did I tell him that I did not know anything about the case. I haven't told him anything. Frank Bristow asked me if he was drunk, and I told him I didn't think so."

Choc Manis, called as a witness for the defendant, stated:

"I live north of Coalgate. I am a farmer. I was in Coalgate on the day that Frank Bristow was arrested on this charge. I bought a disc from him on that day, and paid him $10 for it. When we loaded the disc, I said we ought to have a drink of beer on that; and we came to get the beer. We ordered a glass of beer; and the officers walked in the tavern, and arrested him, when we sat down. I am 31 years old. Frank Bristow was sober on that day."

On cross-examination he stated he might have drunk some beer or something.

"I was not trying to detect whether he was drunk or sober. We loaded the disc out at the place where he lives. Frank helped us load it. I have been convicted of whisky."

Mose Primer was called as a witness on behalf of the defendant, and stated:

"My name is Mose Primer. I am 51 years old. I live three miles north of Centrahoma. I know Frank Bristow. I was in Coalgate the day he was arrested. I was arrested first. The officer came and got me. He said, 'I am going to take you.' I started to joking, and he said, 'I will take you anyhow.' I said, 'All right, I will go with you.' He took me to jail; and I wanted to get out that day, and told him for Frank to get me out. After awhile

he brought him, and put him in jail. I wanted Frank to help me get out of jail; but they arrested him and put him in jail. I don't know what Holson's name is. I know Williams of Atoka. He was in Coalgate that day. I met Frank on the street before this arrest, and talked with him awhile. Just general conversation. I saw the defendant Frank Bristow in Coalgate that morning."

F. E. Bristow the defendant, testifying in his own behalf, stated:

"I am 64 years of age. I came to this country before statehood. On the day I was arrested, I was trying to make a trade with some Indians to buy some land from them. I saw John Holson that day. While I was in jail, the Indians that I was expecting to buy the land from got away. That morning I sold Choc Manis a disc, and he gave me $10 for it. After he paid me, he said, 'Frank we ought to have a little beer on this.' And I said, 'Yes, let's get it.' We went to the Tavern and ordered the beer; and the girl opened it; and just about that time Max Sandman and McMillan came in, and arrested me. They said, 'You have been hollered on; and we will have to take you to jail.' I told them to let me drink the beer; and they said they couldn't do it. And to the jail house I was taken. I was not drunk that day. I was buying this boy a beer, but I did not get to buy it. I had $10 in my pocket when they put me in jail, and gave it to Max; he took it to the sheriff's office, and kept it until they turned me out."

On cross-examination he stated: "I did not know where the Indians went."

On redirect examination he said:

"I sent Mose Primer after some Indians. I know Williams of Atoka. Mose Primer assists him sometimes in making purchases from the Indians. I was kept in jail until the next morning; then I made bond. I was as sober when they put me in jail for being drunk as I am now. I have trouble with corns on my feet; and sometimes when they are hurting, I don't walk straight. I have been drunk. I was not drunk at the time they took me to jail for being drunk. I didn't have a start that day towards getting drunk. I take a drink, and sometimes get drunk."

The foregoing is the substance of the testimony that was introduced in this case.

The defendant has assigned the following errors, alleged to have been committed by the court: (1) The court erred in instructing the jury as to the time and place of the crime committed. (2) The verdict is contrary to the law and the evidence. (3) The court erred in not granting the plaintiff in error a new trial. (4) That there is no evidence on which to base a verdict.

It is apparent that Sheriff Clark, as good an officer as he is, did not believe that the defendant was drunk when he saw him on the street, and when he stated that he was staggering. The sheriff's duty was plain. If he saw this defendant commit a crime in his presence, his duty was to have stopped the defendant, and taken him into custody; and either to have sent him to his home or taken him to jail until he sobered up or made his bond for his release. But the fact that the sheriff did not do it clearly shows that at the time when he said he saw the defendant going down the street staggering, he did not believe that the defendant was drunk, and that his testimony in this case is simply to try to bolster up and support the action of his deputies.

Let's look a little further into this case, and we will find that John Holson went to the Fowler Barber Shop, where the sheriff was, and told him, not that the defendant in this case was drunk, but that Mose Primer was drunk; and the sheriff communicated with his officers; and they went out and took Mose Primer to jail.

John Holson admits that Williams, a land buyer commonly known as a land grafter, wanted him to tell the sheriff that the defendant was drunk, in order to get him in jail. Williams was in the city of Coalgate at the time.

As the defendant was going down the street that morning, and just a short while before he was arrested,

W. P. Powers and Mr. Moore met him at different places along the street; and they say he was not drunk. Moore said he thought the defendant had had a drink; but he does not say what he thought the defendant had been drinking, if anything.

Alva Wheeler, who worked at Gus Fleck's restaurant, says that the defendant was not drunk, and that no one in the restaurant had complained about the defendant being drunk. Alva Wheeler states that the defendant came into the restaurant, and ordered a bottle of beer; but before he had had time to drink it, the officers came in and took him out, insisting that he was drunk.

Choc Manis, who had bought a disc from the defendant, tells the court how it happened that he and the defendant were in the Fleck Restaurant at the time the officers came in; that after the disc had been loaded, that he suggested to the defendant that they ought to have a beer, and the defendant said, "All right"; and that the defendant was not drunk. They went into the restaurant; the beer was ordered, opened, and before they had time to drink it, the officers, on rumors they had heard somewhere along the line, came in and took the defendant out on a charge of being drunk. Neither of the officers who went in the restaurant and took the defendant out, knew anything about the defendant being drunk, except a rumor they claim they received from the sheriff, absolute hearsay, and without any fact from the sheriff to support it, except the statement of Holson, who went into the barber shop and told the sheriff that Mose Primer was out somewhere drunk. The defendant says he was not drunk; and the owner of the restaurant, Gus Fleck, says that the defendant was not drunk at the time he was arrested and taken out of his restaurant.

3.2 beer is declared to be non-intoxicating by the Oklahoma Statutes; and it is sold publicly in the different places of business throughout the state.

Officers, always when they get in a close place for testimony to support their charge of drunkenness, say that they smelled the defendant's breath. There is not one officer in a hundred who can draw a distinction between the breath of an individual, who has been drinking beer and one who has been drinking whisky, if it had been some time since the liquid had been used by the party, whose breath the officers claim they smelled.

In all criminal trials, the defendant is entitled to a fair and impartial trial by an impartial jury; and if convicted at all, he must be convicted by competent evidence.

Section 3062, O. S. 1931, 22 Okla. St. Ann. § 834, in part provides that questions of fact are to be decided by the jury.

It has been repeatedly held by this court that the jury is the exclusive judge of the weight of the evidence; and if there is a clear conflict of evidence such that different inferences can properly be drawn from it, this determination will not be interfered with, unless it is clearly against the weight of the evidence, or appears to have been influenced by passion or prejudice.

A careful reading of the testimony in this case shows that the verdict and judgment is clearly against the weight of the evidence, there being no positive evidence that the defendant was drunk at the time the officers went into the restaurant and took him into custody, took him to jail, and kept him there over night. The man in the restaurant and the owner of the restaurant, both, testified positively that the defendant was not drunk. The fact that the two officers, Max and McMillan, who went into the restaurant where the defendant was, and took him out without any authority of law, except the authority of might and power possessed by officers that no private citizen cares to resist, and threw him in jail, shows the deputies exceeded their authority. This kind

of conduct on the part of officers often causes trouble in communities, and has sometimes led to personal injuries and death. An officer has no more right to violate the law than an individual; in fact, he is under more obligation to obey and respect the law than is an individual. From the statements of the officers, themselves, who went into the restaurant and took the defendant out, it is admitted that they knew nothing about this defendant being intoxicated, and the only authority they had to go in where the defendant was and place him under arrest and take him out, was some conversation that the sheriff had had with them over the telephone.

The owner of the restaurant and those in there did not complain against the defendant, and say that he was drunk. The officers' statement is not borne out by the testimony of the witnesses, who were unbiased and unprejudiced in the case; and there is no competent testimony in the record sufficient to support a conviction against the defendant of being drunk in a public place.

This court has repeatedly held that it will not disturb the verdict on account of the insufficiency of the evidence when there is evidence to support it.

In Cude v. State, 42 Okla. Cr. 357, 276 P. 240, in the first paragraph of the syllabus, this court said:

"To sustain a conviction, it should appear not only that the offense was committed, but the evidence inculpating the defendant should do so to a degree of certainty, transcending mere probability or strong suspicion."

In White et al. v. State, 13 Okla. Cr. 76, 162 P. 232, in the first paragraph of the syllabus, this court stated:

"While it is well settled that this court will not disturb the verdict on account of the insufficiency of evidence when there is evidence to support it, the converse rule is equally well settled that it is not only the province, but the duty, of the court to set aside such a verdict when it is contrary to the evidence, or where there is no evidence to support it. The performance of this duty on

the part of the court is the exercise of legal discretion and judgment as to the sufficiency of the evidence to overcome the legal presumption of innocence, to which every one is entitled who is put upon his trial for an offense."

Wheeler v. State, 67 Okla. Cr. 291, 94 P. 2d 9, and authorities therein cited.

It is seldom that this court feels it to be its duty to reverse the ruling of the trial court, and to set aside a verdict for the want of sufficient legal evidence to sustain it; but when, as in this case, it is manifest that the verdict is clearly contrary to the evidence, and the judgment is wrong and should not be allowed to stand, we have no discretion in the matter, and must reverse the decision of the trial court.

After a careful examination of the record and the testimony, and considering the facts surrounding the prosecution of this case, we hold that the evidence of the state is insufficient to sustain the conviction of the defendant for being drunk in a public place.

The case is reversed and remanded.

DOYLE, P. J., and BAREFOOT, J., concur.