## RAY COLE v. STATE.

No. A-9695.   Aug. 7, 1940.
(104 P. 2d 981.)

A. L. Commons, of Miami, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., for the State.

DOYLE, P. J.  The information in this case charged that in Ottawa county, on the 19th day of March, 1939, Ray Cole did "commit the crime of exceeding the speed limit in the manner and form as follows, to wit: Said defendant then and there being did then and there willfully and unlawfully move a truck of a weight less than twenty thousand pounds upon a public highway, to wit: United States Highway No. 66, from a point on said highway

about one and one-half miles northeast of the town of Afton, Ottawa county, Oklahoma, to another point on said highway about two miles northeast of the town of Afton, Ottawa county, Oklahoma, at a rate of speed in excess of 35 miles per hour, contrary to" etc.

On the trial the jury returned a verdict as follows:

"We the jury, impaneled and sworn in the above entitled cause, do upon our oaths find the defendant guilty as charged in the information, and fix his punishment at a fine of $25.

"Recommend that fine be remanded."

Motion for new trial was duly filed, presented and overruled. Exception reserved.

The errors assigned are substantially that the evidence is insufficient to uphold the judgment of conviction; and that "The verdict shows on its face that the jury did not intend to penalize the defendant, but merely as a reprimand."

In our opinion the verdict of the jury is not uncertain. It fixed the defendant's punishment, and the clause in it is merely a recommendation that the fine be remitted. It is in no sense a part of the verdict. It was improper to make this recommendation in the verdict, but it does not affect the validity of the verdict, and was not prejudicial to defendant. Estes v. State, 35 Okla. Cr. 335, 250 P. 809.

The main question presented by the record for review is, Does the evidence sufficiently support the verdict?

The testimony of E. A. Eaton, the only witness called by the state, is substantially as follows:

"I am a state highway patrolman, operating out of Miami. On the 19th day of March, 1939, I saw the defendant east of Afton, on U. S. Highway No. 66, driving a truck which in my judgment would weigh less than 20,000 pounds,

I was driving a patrol car, a Ford V8. In my judgment the defendant was driving at a speed of 60 miles an hour; I pulled up beside him, sounded my horn and motioned to him to pull over and stop, but he did not stop until he drove over the overpass; a woman and two children were in the car with him; he said it was his wife and children, I took him into custody and we came on to the sheriff's office in Miami; I called a justice of the peace  In the meantime the defendant called Mr. Commons, and he came down and took care of the matter for him."

On cross-examination he stated:

"I was behind him, coming from Afton, the defendant's car was a 1935 make, I think it was a Chevrolet. I talked to the defendant in the presence of his brother and Sam Hudson; the defendant asked me what he was going to do with the woman and children."

Asked if in that conversation "you said you didn't give a damn"? State's objection sustained.

"I passed another truck in the rear of the defendant's; it was on Sunday afternoon. Otis Cole, a man supposed to be his brother, said he always thought the highway patrolmen were courteous."

Asked if he said he would take his black-jack and take his coat off and would whip this fellow. He answered, "No, sir."

"That just before he got ready to leave Mr. Cole said I had used abusive language. I did not. I did not talk to him abusively, but he wanted to argue a lot, but I did lose a little patience."

The state rested and the defendant interposed a demurrer on the ground that the evidence is insufficient to support the allegations in the information. Demurrer overruled. Exception allowed.

Ray Cole as a witness in his own behalf testified:

"I have lived in Ottawa county since 1898. Orville Cole and Otis Cole are my brothers; I was arrested Sun-

day about two o'clock in the afternoon. I had a driver's license and in the test the Highway Department instructed me not to stop on an overpass. I have never been convicted of any crime, I have been driving a truck and automobile about 15 years. That day I was driving a 1935 V8 Ford truck. I was helping my brother move from Fairland to Afton; Mrs. Sam Hudson and her two daughters were in the truck with me; Sam Hudson was riding with my brother in the Chevrolet truck close behind. I was about one third on the overpass when I heard the officer blowing; I motioned to him that I would go and park down at the foot of the overpass, and I did. The first remarks he made was that I was driving too fast and reckless. Asked why I had not stopped when he signaled me, I told him I didn't think I was driving too fast, and that I was not supposed to stop on the overpass. He asked for my driver's license, and took the tag number and checked the lights. My brother Otis came up and said he didn't think I was going too fast. The patrolman would not listen and told me to go on to Miami. He even offered to fight. I told him I didn't want a fight, and said, 'I am ready to go,' and when I left he and my brother were talking."

On cross-examination he stated he had been driving the truck a year and a half. It was a second-hand truck, owned by Mr. Gaines; that he was going about 35 miles an hour; that it was impossible for this truck to go 40 or 50 miles an hour, that would tear it up, and it tore up once while driving 15 miles an hour, since then the rings have stuck on the pistons. It didn't have a speedometer.

Sam Hudson testified:

"I have lived south and east of Fairland about two miles from Fairland, for 11 years; Otis Cole, Ray's brother, came after me that morning to help Ray move; my wife and daughters were in the truck with Ray Cole. We were driving about 30 miles per hour when they passed us; I never saw the officer until we got to the south side of the overpass, about 100 yards. I did not hear him give Ray any signal until on the north side of the overpass. When

they got on level ground where Ray stopped. His brother, Otis, and I were behind him and we stopped. The officer went up to Ray and told him he wanted him to go to Miami; Ray said, 'What will I do with this woman and children in my care?' The officer said: 'I don't give a damn what you do with this woman and two children.' Right then my oldest girl got to crying; she is a very nervous girl and I told my wife to try to keep her still. Finally I told them to go with Otis; Mr. Eaton said he would take his coat off and go to it with any one of them, and told Ray to go on to Miami. Mr. Eaton had a gun on, but he didn't offer to use the pistol."

Mrs. Sam Hudson testified:

"We were helping Otis Cole to move from Fairland to Afton, Ray Cole was helping; coming back to Fairland I was riding with Ray Cole and my daughters were with me. Just as we started on the overpass Mr. Eaton hollered and said to stop; Ray Cole stopped when he got over the overpass. There the patrolman said that Ray would have to go to Miami. Ray said: 'What am I going to do with the woman and these children'? and the patrolman said: 'I don't give a damn what you do with them,' and said he would fight any of them, and my little girl got excited and started crying; I got in the car with Otis Cole and my husband, and we came on to Fairland."

Otis Cole testified:

"I have lived for years around Fairland, I was moving to Afton that day; brother Ray and Sam Hudson helped me to move; coming back from Afton Sam Hudson was with *me in my car; Sam's wife and baby girls were with Ray;* I was driving my car when Ray passed me; I slowed up so he would pass, I wanted him in front; I saw Mr. Eaton drive up to the other truck; we passed the overpass; my brother stopped on the other side. We got out; Ray told him he didn't stop on the overpass, that he was following instructions given him when they gave him his test for a driver's license. Mr Eaton seemed mad, and he thought Ray was getting back at him; he said he didn't want any one to get back at him; Ray said, 'What should I do?' He

said go to Miami; Ray asked him about the children and he said, 'I don't give a damn what you do with them.' "

On cross-examination he stated Ray's truck at the time the officer signaled him to stop was just a good driver's distance ahead:

"I was driving between 30 and 35 miles an hour when Ray passed me, I wanted him in front because his truck was in bad condition, it was an old truck, and he had been having trouble with it. When they stopped I was putting up the argument that the patrolmen had always been my friends, and I thought this man was out of his place. He said he didn't give a damn what happened to this woman and two children, and he said he would pull off his coat and would go to it with either of us; I was just telling him that the patrolmen had been my friends and always trying to help me, and I didn't think we were going at a high rate of speed."

Howard M. Scott testified:

"I live at Fairland, I am county superintendent of public instruction, I have known Ray Cole about 28 years, I know his general reputation in that community around Fairland for truth and veracity and it is good."

Thereupon it was stipulated by and between the respective counsel that J. S. Campbell, a merchant of Fairland and a member of the county excise board, if he took the witness stand, would testify that the general reputation of the defendant, Ray Cole, as to truth and veracity in that community was good.

In rebuttal, E. A. Eaton, recalled, testified:

"I first noticed Ray Cole pull out and pass, and I had to wait for an opportunity to catch him, I had to pass another Cole truck before I got him. I did not use any such language as these witnesses testified to."

At the close of the testimony the defendant moved the court to instruct the jury to return a verdict of not guilty, which was overruled. Exception reserved.

The prosecution in this case was based on that part of section 12, chapter 113, Session Laws 1933, 47 Okla. St. Ann. § 95, which reads:

"No truck, truck-tractor with semi-trailer attached, or trailer, shall travel or be moved upon any public highway, when the weight of any such vehicle or vehicle and load is 20,000 pounds or less, at a rate of speed in excess of thirty-five (35) miles per hour."

While it is well settled that a verdict will not be disturbed for insufficiency of the evidence, when there is evidence from which the jury may reasonably or logically draw the conclusion of the defendant's guilt, the converse rule is also well settled, that, where there is no evidence to support a verdict, or where it is of such a weak and inconclusive character that a conclusion of guilt may not reasonably be drawn from it, or there is a failure to prove some essential matter to establish the offense charged, it is the duty of the court to set aside such verdict as contrary to law and to the evidence. Jefferson v. State, 31 Okla. Cr. 44, 236 P. 914; Daft v. State, 56 Okla. Cr. 449, 42 P. 2d 146; White v. State, 13 Okla. Cr. 76, 162 P. 232.

After careful consideration of the testimony in this case, it is our opinion that the court erred in overruling the defendant's motion to set aside the verdict upon the ground that the same was contrary to the law and the evidence.

It will be observed that the only witness on the part of the state merely testified, "In my judgment the defendant was driving at a speed of 60 miles an hour."

At most this was merely opinion evidence, and no facts were stated by the witness upon which to base this opinion.

The defendant testified that he had been driving a truck about 15 years, and that he was only going about

35 miles an hour; that it was impossible for this old truck to go 40 miles an hour, and the defendant is corroborated by the testimony of three other witnesses. However, upon the failure of the state to prove the material elements of the offense charged, the defendant's demurrer to the evidence should have been sustained.

It is elementary that evidence on the part of the state should be of such character as to overcome the prima facie presumption of innocence. If the evidence raises a mere supposition, or, admitting all that it tends to prove, the defendant's guilt is left doubtful, or dependent upon mere supposition, surmise or suspicion, the court should advise the jury to acquit the defendant. Upon the whole case it is apparent that this prosecution was without merit.

For the reason stated, the judgment is reversed and the cause remanded to the county court of Ottawa county with direction to dismiss.

JONES, J., concurs. BAREFOOT, J., absent.