Emmitt Frank McCANN, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12502.

Criminal Court of Appeals of Oklahoma.

Oct. 30, 1957.

Rehearing Denied Nov. 20, 1957.

C. L. Hamilton, John L. Dunn, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

POWELL, Judge.

This is an appeal from a conviction for driving while under the influence of intoxicating liquor, second offense, and where the jury assessed punishment at confinement in the State Penitentiary for one year, and a fine of $100. See 47 O.S.Supp.1955 § 93.

The pertinent portion of the information, filed in the district court of Tulsa County, reads:

"* * * that Emmitt Frank Mc-Cann, on the 2nd day of September, A. D.1956, in Tulsa County, State of Okla-homa, and within the jurisdiction of this court, did unlawfully, wilfully, wrongfully and feloniously drive and operate a motor vehicle, to-wit: a 1951 Ford sedan, bearing 1956 Oklahoma license number 10-3444, over and upon a public highway of this State, to-wit: United States Highway No. 169, at a point 3 miles south of Tulsa, in Tulsa County, Oklahoma, while under the influence of intoxicating liquor. That said defendant, to-wit: on the 10th day of June, 1955, was convicted of the crime of driving while under the influence of intoxicating liquor in the county court of Choctaw County and was sentenced to a fine of $250 and costs and 10 days in the county jail by the Honorable Judge Eugene D. Ellis, case number being 4975;

"That said defendant heretofore, to-wit: on the 23rd day of October, 1954 was convicted of the crime of driving while under the influence of intoxicating liquor in the county court of Creek County, Sapulpa, Oklahoma, and was sentenced to a fine of $50 and costs by the Honorable Judge S. M. Cunningham, case number being No. 6272-C, contrary to the form of the statutes in such cases made and provided," etc.

For reversal the only specification of error presented is the contention that the evidence was insufficient to show that the defendant was actually the driver of the motor vehicle described in the information, and that was found moments after it had crashed into the guard poles, overturned on its left side and skidded some 40 to 50 feet. All the evidence of both the State and defendant shows that the occupants of the car found in the car after it had overturned were under the influence of intoxicating liquor. They had been indulging in a drinking orgy that commenced on a Saturday night for some, and continued by all during the Sunday afternoon until the time of the accident, which occurred on Sunday night, September 2, 1956, at around 11 o'clock. The diet was a keg of home brew, some

moonshine whiskey mixed in with standard brands. A gallon jar with some moonshine whiskey in it was found in the automobile following the wreck.

For reversal the defendant cites paragraph 1 of the syllabus in Wheeler v. State, 67 Okl.Cr. 291, 94 P.2d 9, reading:

"To sustain a conviction, it should appear that not only the offense was committed, but the evidence inculpating the defendant should do so to a degree of certainty, transcending mere probability or strong suspicion."

Also cited is Robinson v. State, 71 Okl. Cr. 75, 108 P.2d 196. That case held that there can be no conviction of a defendant in a criminal case upon an uncorroborated confession, and that in every criminal case it devolved upon the State to prove, first, the corpus delicti; second, that the crime charged was committed by the accused. As an abstract proposition there can be no doubt as to the correctness of the above rules in this jurisdiction.

Defendant in his brief argues:

"The evidence disclosed is insufficient to sustain a conviction of the crime charged and further shows that placing the defendant behind the wheel at the time that the accident occurred was through the testimony of two police officers who arrived at the scene of the accident some 20 minutes later and the testimony of one of the officers that the defendant stated 'that he was driving the vehicle and was the owner but they couldn't prove it.' The police officers further testified that the three occupants, in addition to the defendant, stated at the time and scene of the accident when they were arrested that the defendant was driving and also to which the testimony of the three witnesses who were also occupants in the automobile denied making a statement stating that the defendant was driving but that one Chester Couch was driving the automobile at the time the accident occurred, but had left the scene

of the accident and was not there at the time the officers arrived.

"The testimony of the officers about the statement made by the occupants at the scene of the accident goes merely to the credibility and is not proof of anything; that the officers testified that the defendant was driving must be corroborated by other competent evidence."

We have carefully read the entire record and on the question as to whether the defendant was the driver of the car, find the following: B. J. Hubbell, Route 1, Box 60, Sand Springs, testified that on the 2nd day of September, 1956, within one-half mile of 81st Street on South Union, or Highway 169, in Tulsa County, at about 11 P.M. he was in his pickup with a Mr. Dale and as he drove north over a little rise he saw a car parked on the right hand side of the highway with the lights on, and directly in front of it was another car, turned over on its side, and a man and woman were standing by the side of the car, aiding in moving a woman from the car through the right front door window. Witness parked his car and he and Mr. Dale went to the wrecked car and after the woman had gotten out, they looked in the car, and by aid of flashlight observed the defendant McCann in the front seat, huddled on the ground, more or less, as the window on the driver's side of the car was open. Witness helped get the defendant out of the car. It was the opinion of witness that the defendant was intoxicated. The car and the occupants were saturated with the odor of alcohol. A man and woman were in the back seat. Witness helped get them out. In the meantime, witness said that the defendant went across the road to a field and left the scene of the accident.

The testimony of J. D. Dale was substantially as that of witness Hubbell. He testified to seeing defendant, "Go across the pasture" after they got him out from the front seat of the car, and he said that witness Hubbell had a flashlight which enabled them to view the occupants of the

car before they got them out. He then identified the persons in addition to the defendant who had been found in the car.

George Moore, State Highway trooper, testified to driving to the scene of the accident in question, and shining his lights out in an adjoining field, and observing the defendant about three or four blocks out in the field. His partner, E. J. Edwards, proceeded out in the field to overtake the defendant and to place him under arrest. Witness stated that after Mr. Edwards returned the defendant from the field and placed him in the patrol car, that witness had a conversation with the defendant, and he asked him if he was the driver of the car, and defendant said, "Hell, yes, I was driving the car, but you can't prove it." Witness said that the defendant also stated to him that the car in question belonged to him. Witness stated that there were other persons at the scene of the accident who admitted being in the car at the time it overturned, to-wit: Chester Norris, and two women, Shawnee Rogers and Evelyn Towns. He said that they had put all four in the back seat of the patrol car, and they were present during his conversation.

Patrolman Edwards testified as his partner Moore turned his spotlight out in the field, he located the defendant McCann and observed that he was about 500 feet east of the car, and he proceeded to go after him. He said that when he located him, he advised the defendant that he was under arrest, and helped him and a lady who was with him to get up from the ground. He said that the lady was a Mrs. Rogers. He said that defendant was questioned after he got into the patrol car as to who was driving the car, and that he said, "Yes, that he was driving the car, but that we would have a hell of a time proving it."

After the testimony of the officers, it was stipulated by and between the attorney for the defendant and the attorney for the State that the records in the office of the court clerk of Creek County would show that on October 23, 1954, the defendant was found guilty of driving while under the influence of intoxicating liquor in the county court of Creek County, and paid a fine of $50 and costs. It was further stipulated that if W. R. Glenn, highway patrolman, was present he would testify that defendant Emmitt Frank McCann was the one and same man as that convicted in case No. 6272–C, in Creek County, on October 23, 1954.

The defendant did not testify, but he offered the testimony of the other persons found in the overturned automobile in question, to-wit: Lester Norris, Shawnee Rogers, and Evelyn Lorain Towns, as well as the testimony of Robert Rogers, father of Shawnee, and Bertha McCann, mother of the defendant.

All of the defendant's companions in the car at the time of the accident admitted to being under the influence of alcohol. All except Shawnee (who admitted that she was out of her head and did not know what went on), denied that defendant told the officers that he was the driver of the car, but said that the officers were advised by Mrs. Towns, and by Lester Norris that the car had actually been driven by Chester Couch, who lived on the Rogers farm and had for many years. The evidence was to the effect that Couch and Shawnee Rogers lived together as man and wife, though she denied this when she testified. However, her father testified that his daughter Shawnee lived with Chester Couch. These witnesses could not account for what happened to Couch after the wreck. None saw him get out of the car, all testified that the defendant and Shawnee sat to his right, which would place them on top of Couch as the car overturned on its side.

Robert Rogers claimed that he was asleep in the kitchen of his home and was awakened about 11 P.M. on Sunday night, September 2nd by Chester Couch, who said to him, "We had a wreck", and then Chester turned around and went home. Witness admitted that he did not have a watch or clock, and was guessing at the time. He made no effort to find out the details of the wreck, or if anyone was injured.

In rebuttal officer Moore testified that in the patrol car, after the arrest, that he

asked Evelyn Towns and Lester Norris individually who was driving the car at the time of the accident, and that each answered that the defendant, McCann, was the driver.

Officer Edwards also testified that he heard Evelyn Towns and Lester Norris say that defendant McCann was the driver of the car. He further said that neither the defendant nor his companions made any mention of a person named Chester Couch.

Chester Couch was called as a rebuttal witness by the State. He testified to knowing the defendant McCann, Evelyn Towns, Lester Norris and Shawnee Rogers. He said that he acted as a golf caddy on a near-by golf course and sold some Choc beer on the side. He detailed the drunk orgy at his place on Saturday and Sunday, September 1 and 2, 1956. He made several trips on Sunday to get water and whiskey, but said that McCann, Norris and the two women slipped off from him Sunday evening and that he was not in the car with them at the time of the accident. He denied telling Mr. Rogers about the wreck until early Monday morning. He said about midnight a man came by and told him about the car wreck, and that Mr. Rogers and his wife were asleep in a car back of his place and that he was unable to arouse them until early the next morning. He admitted that he had told Mrs. McCann, defendant's mother, that he was the driver of a car to keep her from worrying too much. He said a number asked him about the wreck and that he told all of them a different story. Witness further swore that Shawnee Rogers had lived with him for many years as his wife.

As pointed out by the Attorney General, this court has held that a confession is direct evidence. In Cordonnier v. State, 86 Okl.Cr. 291, 192 P.2d 298, 300, the defendant was convicted of larceny of an automobile. The police officers testified that when questioned by them the defendant at first claimed that he had borrowed the automobile, but that he later told them he had stolen it. In that case the defendant was driving the car at the time of his arrest. Defendant in that case

did not testify. In the body of the opinion, this court said, in part:

"It was contended that the court should have given an instruction on circumstantial evidence and an instruction on the weight to be given to the possession of recently stolen property. The confession of the defendant is direct evidence, and in view of his confession it was not necessary to give any instruction on circumstantial evidence."

In the within case, the defendant admitted to the officers that he was the driver of the automobile. He did not deny it at the trial. His admission to the officers constituted direct evidence, and the weight of the evidence was an issue for the jury. The jury found that issue against the defendant and brought in a verdict of guilty.

We have many times held that where there is competent evidence in the record to support the verdict of the jury, that the same will not be disturbed on appeal by this court. Ryan v. State, 97 Okl. Cr. 119, 258 P.2d 1208; Gray v. State, 97 Okl.Cr. 121, 258 P.2d 950, and cases cited.

By reason of the above, the case must be and is affirmed.

BRETT, P. J., and NIX, J., concur.