## E. D. WRIGHT v. STATE.

No. A-4226.    Opinion Filed Sept. 16, 1922.
(209 Pac. 179.)

(Syllabus.)

1.      Schools and School Districts—Parent not Liable for Failure
to Send to Public School Child Taught by Private Instructors.
Where a parent is prosecuted under the penal provisions of our
compulsory school attendance statute for a failure to cause
his eight year old child to attend the public school, and where
such parent shows that the child has been taught by compe-
tent private instructors and is proficient in practically all the
branches taught in the public school to children of about the
same age, such parent is not subject to the penalties prescribed
by section 7930, Rev. Laws 1910, as amended in section 1, c.
59, Sess. Laws 1919.

2.      Indictment and Information—Necessity for Negative Averment
and Evidence to Sustain.—Where a negative averment is an
essential and material part of the description of an offense,
such negative averment  should be made and sustained by the
evidence.

3.      Schools and School Districts—Erroneous Instructions as to
Duty of Parent Educating Child Privately.—Instructions relat-
ing to qualifications of teachers and courses of study, as set
out in the opinion, held erroneous.

Appeal from County Court, Major County; Harry Ran-
dall, Judge.

E. D. Wright was convicted of violating the compulsory
school laws, and he appeals. Reversed.

Tom E. Willis, for plaintiff in error.

George F. Short, Atty. Gen., and N. W. Gore, Asst. Atty.
Gen., for the State.

BESSEY, J. E. D. Wright was convicted in the county
court of Major county, on the 28th day of December, 1921,
of violating the compulsory school attendance laws of this
state, and by the judgment of the court his punishment was
assessed at a fine of $25 and costs, amounting to $131.45.

This prosecution was instituted under section 7930, R. L. 1910, as amended by section 1, chapter 59, Session Laws of 1919, which in substance provides that it shall be unlawful for any parent to neglect or refuse to cause his child or children to attend some public or private school, or other school, unless other means of education are provided, for a period of two-thirds of the time the public school in the district of his residence is in session. The information charged that E. D. Wright, defendant below, neglected, refused, and failed to compel his minor child, Felicia Wright, to attend the public school of his district, or any private school, for two-thirds of the time the public school was in session.

This information was defective, in that it failed to charge, negatively, that the child attended no other school, and that no other means of education was provided, as incorporated in the statutory definition of the offense. These were not mere matters of defense; they constitute an essential element of the offense, as defined by statute. Where a negative averment is an essential and material part of the description of an offense, such negative averment must be made. 22 Cyc. 344; 14 R. C. L. 188; 6 Ann. Cas. notes 726 et seq.

Mrs. Wright, the mother of Felicia, testified that her daughter was eight years of age, and that she, the mother, had been giving the child instruction in the branches taught in the public school for a period of about five hours each day. The mother was a graduate of a normal training school, in which the curriculum included pedagogy, language, literature, history, mathematics, and other branches.. She testified that the child was proficient in drawing, writing, spelling, reading, and mathematics. In addition to these branches of study, she was being given Bible and religious instruction, instruction in paper cutting, clay modeling, and drawing. Exhibits of the child's work were offered, showing consider-

able proficiency in writing, mathematics, drawing, and other subjects.

The evidence also shows that the father, plaintiff in error here, was an experienced teacher; that he had taught three years in the public schools of Kansas, and had taught school several years in Oklahoma; that he had been employed by the government three years as a teacher in the Phillippine Islands; and that he had taught one year in a business college at Wichita, Kan. The testimony shows that he assisted his wife in giving Felicia instruction, and that she was unusually proficient in all branches for a child of her age.

The testimony of the father and mother as to the child's training was not successfully impeached by any of the state's witnesses. The parents offered to show in open court, by demonstrative evidence, that the child had received efficient educational training, which offer was refused.

Ostensibly this was an action to punish a parent for neglecting the education of his child; in reality, the record indicates that this prosecution grew out of religious differences and disputes arising out of the management of school affairs, involving a bond issue, the location of a consolidated school building, and methods of instruction and school discipline. The parents were members of the religious sect known as Seventh Day Adventists, and testified that they were desirous of training their children to become missionaries and ministers, and claimed that the training and moral influences in the public school there were not favorable to that end. For this and other reasons they decided to give this child instruction at home, in lieu of a public school training. So long as the child's education was not neglected, we think these parents, under the Constitution and laws of this state, had a right to manage and supervise the education of their child, if done in a fitting and proficient manner. The proof

is not at all convincing that the education of this child was being in any way neglected. It seems to us that the state misconstrued the scope and spirit of the statute upon which this prosecution was based. Over the objection of plaintiff in error the court instructed the jury, in part, as follows:

"In case a parent elects to furnish other means of education, it is his duty under the law to furnish the necessary equipment for said child, and an instructor, competent to instruct his child in the prescribed course of study, as laid down by the state, or in some other course of instruction equal to or better than the course of instruction as laid down by the state, so that the child may be educated to fill its station in life when it reaches its majority.

"You are instructed that the state reserves the right to fix the number of hours the children in the state shall be taught, and in that respect you are instructed that a school month shall consist of four weeks of five days each, of six hours per day."

"You are instructed that under the laws of the state of Oklahoma no person or persons are authorized or permitted to issue any special permit, certificate, or temporary certificate to any person, authorizing them to teach, except the county superintendent of the county in which the special permit, certificate, or temporary certificate, is to be used, and that in that event such temporary certificate, permit or special certificate shall only remain in effect until the next regular teachers' examination, and this applies to public schools of the county."

In addition to the foregoing, the court gave a lengthy instruction defining the qualifications of teachers in public schools, which the jury by inference may have applied to private tutors. These instructions, we think, were erroneous. Under the terms of the statute and under the Constitution, a parent may have his children instructed by a competent private tutor or educated in a sectarian or other accredited school, without a strict adherence to the standard fixed for

teachers in the public schools of the state. The statute makes no provisions fixing the qualifications of private teachers, or teachers in private schools or academies, or to prescribe definite courses of study in such cases. Of course, if such schools or instruction were manifestly inadequate, or such instruction was furnished for the sole purpose of evading the proper education of a child, the statute could then be properly invoked. Whether such independent facilities for education, outside of the public schools, are supplied in good faith, and whether they are equivalent to those afforded by the state, is a question of fact for the jury, and not a question of law for the court.

For the reasons given above, the judgment of the trial court is reversed.

DOYLE, P. J., and MATSON, J., concur.