## PAUL CROUSE v. STATE.

No. A-6252. Opinion Filed Feb. 6, 1928.
(263 Pac. 691.)

Mauntel & Spellman, for plaintiff in error.

The Attorney General, for the State.

DOYLE, P. J. On information charging that in

Woods county, on the 23d day of December, 1925, "Paul Crouse sold to Roy I. Wood, intoxicating liquor, to wit, beer, a malt beverage, having an alcoholic content in excess of one-half of 1 percentum of alcohol, by volume," he was convicted and in accordance with the verdict of the jury was sentenced to pay a fine of $50 and imprisonment in the county jail for 30 days. This appeal is from the judgment.

To properly determine the questions presented, consideration of the evidence will be necessary.

The state relied for this conviction upon the testimony of Roy I. Wood and R. J. Smith, both of Hutchinson, Kan., who it appears were commissioned as deputy sheriffs and each received $10 a day as detectives to secure evidence of violations of the liquor laws in Woods county.

Roy I. Wood testified: That with R. J. Smith and Paul Menifee he visited the defendant's home two miles north of Alva, and there he bought a dozen bottles of beer of the defendant, and paid him $3.50. That the sale was made December 23d, at 10 o'clock in the forenoon. He produced a bottle and read the label thereon as follows:

"Paid by Roy I. Wood, Alva, Oklahoma, December 23, 1925. Bought one dozen bottles of beer from Crouse. 10 o'clock in the morning. Paid him $3.50 for same. Delivered northeast of town. Roy I. Wood and R. J. Smith."

That they drove back to Alva, where Menifee got out of the car. Then they drove south of town; there met Sheriff Beem and Deputy Johnson and turned over this beer to them.

In answer to specific questions, he testified as follows:

"Q. Where was it you drank the one-third part

of the bottle of this liquor?   A. In the yard of Crouse's.

"Q.   Did Mr. Smith drink any?   A. I think so.

"Q.   Did Paul Menifee drink any?   A.   Yes, sir.

"Q.   Where did you go?   A. Came back to town.

"Q.   What did you do then?   A. Turn them over this beer.

"Q.   Did you open any bottles down there?   A. Yes, sir.

"Q.   Did you convince the sheriff and deputy sheriff you had beer? A. Yes, sir. I think they thought it was beer.

"Q.   What do you get per day for your services? A.   Ten dollars a day and expenses.

"Q.   Are you being paid as a witness now?   A. Yes, sir. I get the same wages, $10 a day.

"Q.   For testifying in this case?   A. Yes, sir."

R. J. Smith testified that he was present when the sale was made, that they opened four bottles and drank some, and the rest was turned over to the sheriff.

On cross-examination, he stated that he had been doing uncover work in Colorado, Kansas, and Oklahoma for the last three or four years.

C. T. Johnson, deputy sheriff, testified that he received the stuff from Wood and Smith south of town, that "he took one bottle to have it analyzed and poured the rest out." He was asked if he knew whether or not it was intoxicating, and answered, "No."

G. M. Lisk, head of the department of chemistry. Northwestern State Normal School, was called as a witness, and the bottle identified by the witness Wood was handed to him. He testified that the other label thereon was by him placed there. It reads:

"Chemistry Department Northwestern State Teach-

er's College, Alva, Oklahoma. Analyzed January 16, 1926. Alcohol by volume, 4.5 per cent. By weight, 3.36."

On cross-examination, he was asked what was the alcohol contents of the bottle on the 23d of December, 1925, and answered, "I don't know."

At the close of the evidence for the state, the defendant moved the court to direct the jury to return a verdict of acquittal on the ground that the evidence is insufficient to sustain a conviction. Then the state asked leave to reopen the case for further direct evidence. Leave granted.

Thereupon William Deaton, deputy sheriff, testified that he delivered the bottle offered in evidence to Mr. Lisk, and received it back from him. He was then asked by the court, "From whom did you receive it?" and answered, "Charley Johnson, I think."

On cross-examination, he testified:

"Q. When did you get it from Charley Johnson? A. They brought a whole lot of stuff in the office; I don't remember the date."

Here the record is as follows:

"By Mr. Wilhite: The state rests.

"By Mr. Mauntel: We now renew our objection, and ask the court to instruct the jury to find the defendant not guilty, for the reason that it has not been shown that there was any alcohol in the beverage at the time the alleged sale was made.

"By the Court: The burden is upon the defendant to show that. Overruled. Exception allowed."

As a witness in his own behalf, the defendant testified that he was running a threshing machine; that on the afternoon of December 22d he threshed 50 or 60 bushels for Fred Irwin and pulled to Charles Swear-

inger's place, threshed for him that afternoon, then pulled the machine back to Irwin's that night, and the next day finished Irwin's threshing, took dinner at Irwin's place, and pulled the machine 3 miles northeast to Charley Trammel's place, arriving there at 5 o'clock, and after supper went to Alva, arriving there about 9 o'clock; that he did not see the witnesses for the state and had no transaction with them, did not sell them any beer.

Charles Trammel testified that he lived 22 miles southwest of Alva; that defendant was threshing Kaffir corn in his neighborhood on the 22d and pulled his machine to his house on December 23d.

Fred Irwin testified that the defendant threshed some Kaffir corn for him about 2 miles from home, then pulled to Mr. Swearinger's, threshed some there, and came back to his place, eating dinner there on December 23rd and finished threshing about 3 or 4 o'clock.

Charley Swearinger testified that the defendant threshed for him on December 22d and finished just before noon on December 23d; that the defendant stayed there the night of the 22d and then pulled his machine to Charley Trammel's place.

Louis Cecil testified that he was running the engine, and the defendant looked after the coal, oil and water and was with the threshing crew all of the forenoon of December 23d.

Several witnesses, including a minister and a banker, testified as to the good character of the defendant as a law-abiding citizen.

In support of the contention of counsel for the defendant that the judgment should be reversed, it is insisted that the ruling of the court that the burden is upon the defendant to show that there was no alcoholic

content in the beverage was upon the defendant constitutes prejudicial error.

It is always incumbent upon the prosecution to establish each and every material element of the crime charged by the evidence beyond a reasonable doubt before the jury is warranted in finding the defendant guilty, and the law never requires a defendant to establish any material element of his defense beyond a reasonable doubt, and the burden of proof never shifts from the state to the defendant.

The statute declares certain liquors intoxicating, and no proof of the alcoholic content is necessary when it is made to appear that the liquor in question is one of the class enumerated; the liquor is presumed to be intoxicating.

On the other hand, the courts do not take judicial notice of the intoxicating character of a beverage which is not made by any standard formula and is not per se intoxicating liquor. Richardson v. State, 21 Okla. Cr. 393, 208 P. 1052; Rambo v. State, 31 Okla. Cr. 214, 238 P. 869; Skelton v. State, 31 Okla. Cr. 333, 239 P. 189.

The only evidence tending to show that the content of the bottle analyzed contained more than one-half of 1 per cent. measured by volume was the testimony of the chemist who made the analysis, which was not made until 23 days after the alleged sale, and he testified he did not know what was the alcohol content at the time of the sale.

Generally speaking, the evidence of detectives and informers is always carefully scrutinized by the courts. Here the two detectives as witnesses for the state testified to drinking two or three bottles of the liquid in

question, and neither testified that it was intoxicating liquor.

It follows from what has been said that the court committed prejudicial error in placing the burden upon the defendant to show that there was no alcohol in the beverage at the time of the alleged sale.

For the reasons stated, the judgment of the lower court is reversed.

EDWARDS and DAVENPORT, JJ., concur.