## J. R. RICH v. STATE.

No. A-6992. Opinion Filed Jan. 25, 1930.
Rehearing Denied Feb. 28, 1930.
(284 Pac. 903.)

John L. Gilson and Joe T. Rogers, for plaintiff in error.

Edwin Dabney, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

CHAPPELL, J. The plaintiff in error, hereinafter called defendant, was convicted in the district court of Texas county on a charge of embezzlement, and his punishment fixed at a term of three years' imprisonment in the state penitentiary.

The evidence of the state tends to show: That about the 1st of November, 1926, Jerry C. Powell, a farmer, residing in Texas county, deposited in the elevator of defendant, J. R. Rich, 3,900 bushels of maize, the agreement being that Powell would pay Rich 1 cent per bushel per month for the storage, and should have a right to sell such maize at any time or withdraw the same from the elevator upon the payment of storage charges. That Powell delivered the last of the maize to the defendant about December 3d or 4th. That Powell never went back to the elevator nor made any investigation about the storage until about the 1st of March, 1927, at which time the Rich Elevator Company was closed by creditors, and, when Powell went to investigate, there was no maize in the elevator. That immediately after the defendant received the maize for storage, sold the same on the open market, collected the money for it, and never advised Powell that it was sold or paid over to him the proceeds of such sale. The state introduced 49 grain tickets in writing and issued by the defendant in the name of the Rick Grain Company, which recite that the grain was received for storage. That defendant left the town of Hooker where the grain was

stored, in February, 1927, and his whereabouts were unknown at the time the elevator was finally closed. That defendant was finally arrested in the city of Chicago, and brought back to Hooker for trial. The theory of the defendant was that the depositing of the milo maize by Powell with the elevator of the defendant constituted a sale by Powell to the elevator company of the grain deposited; that therefore there could be no conviction of the crime of embezzlement under the facts in the case.

It is first contended that the trial court erred in permitting the information to be amended after the trial began. The original information charged the embezzlement of 3,900 bushels of milo maize and the proceeds thereof, but did not allege the value of this maize. The amendment was made by interlining after the words"3,900 bushels of threshed milo maize" the words "of the reasonable value of $2,000.00." This court has held that the information may be amended in substance at any time after the trial begins with leave of court, if no prejudice therefrom results to the defendant. Lowe et al. v. State, 7 Okla. Cr. 32, 121 Pac. 793; Rollen v. State, 7 Okla. Cr. 673, 125 Pac. 1087; French v. State, 17 Okla. Cr. 542, 190 Pac. 707; Leyerle v. State, 31 Okla. Cr. 179, 237 Pac. 871; Saunders v. State, 33 Okla. Cr. 336, 244 Pac. 55; Robards v. State, 37 Okla. Cr. 371, 259 Pac. 166; Orum v. State, 45 Okla. Cr. 193, 282 Pac. 899.

In the case at bar, the defendant objected to the amendment upon the ground that there was no legal authority for making the same. He made no application for continuance, no showing of surprise, nor made any request for additional time to prepare his defense, but based his objections upon the ground that, the information not having charged an offense in its original form, and the defendant having demurred to the same and raised

the question, and the jury having been impaneled, and most of the evidence offered in the trial of the case, the court was without any legal authority to permit the amendment. The information was defective, in that it failed to charge the value of the goods embezzled. But, since the information was not void for failure to state a cause of action, but merely defective in failing to state the charge in proper form, it was within the discretion of the trial court to permit the amendment. The additional allegation of the value of the milo maize permitted to be inserted in the information would not alter its allegations to such an extent as to require any additional proof upon the part of the defendant. The original information charged the embezzlement of the milo maize itself and of the proceeds of the same. The defendant knew that this maize had a value, and, being an elevator man, he knew the reasonable market value of the same, and could not have been surprised or injured by an amendment of the kind permitted in this case. Nowhere in the record do counsel for the defendant make any showing that the material rights of the defendant were prejudiced by the amendment. Counsel for defendant nowhere point out in their brief any substantial reason why the rights of the defendant were prejudiced by such amendment. Chandler v. State, 3 Okla. Cr. 254, 105 Pac. 375, 107 Pac. 735.

It is next urged that the evidence is insufficient to sustain the conviction. This proposition is based on the contention that the transaction between the defendant and the prosecuting witness constituted a sale and not a bailment. Powell, the prosecuting witness, testified:

"A. Well, I drove down there one afternoon, I and my wife, my wife stayed in the car, and I went in and asked him (Rich) about storage and he said he had storage room and the price agreed upon was one cent per

bushel per month, and that I had permission at any time to sell it at my will, time or place, and that I could demand my grain or sell it if I liked."

In addition to this verbal agreement, testified to by Powell, the state introduced 49 grain tickets issued by the defendant to Powell; each ticket reciting that the grain was received to store. This evidence was amply sufficient to establish the fact that the grain was received by the defendant for storage. Defendant contends that the oral agreement testified to by Powell is governed in Oklahoma by sections 5186, 5221, C. O. S. 1921. In 1915 the Legislature passed what is known as the Uniform Warehouse Receipts Act, now sections 11123-11183, C. O. S. 1921, sections 11144-11146, of which have been construed. These last-mentioned sections of the statute have been construed in connection with the other two sections of our general statute dealing with bailments.

In the case of Citizens' State Bank of Vici v. Gettig, 77 Okla. 48, 187 Pac. 217, the court held that the sections of the Warehouse Act constituted a specific statute, and that it overruled the general statute then in effect, in so far as the particular subject was covered in the special statute. The defendant contends that, since his elevator was only of 20,000 bushel capacity, therefore it did not come within the Warehouse Act independent of any statute regulating bailments. The prosecuting witness should have entered into a contract with the defendant as bailee, and could have stored this milo maize with him and a failure to account for and deliver to the prosecuting witness the milo maize or the proceeds received from a sale of the same would have constituted an embezzlement. Therefore it can make no difference whether the elevator of Rich's could have qualified as a public warehouse or not.

The defendant complains of other errors, but they are all without merit. For the reasons stated, the cause is affirmed.

EDWARDS, P. J., and DAVENPORT, J., concur.