## CONSOLIDATED SCHOOL DIST. NO. 12 et al. v. UNION GRADED SCHOOL DIST. NO. 3 et al.

No. 29196.    Oct. 3, 1939.

E. R. Blosser, for plaintiffs in error.

J. Scott Vincent, for defendants in error.

BAYLESS, C. J. This is an appeal from the district court of Roger Mills county.

Union graded district No. 3, of that county, is adjacent to consolidated school district No. 12, of that county, and brought an action for injunctive relief against the latter. Judgment was in its favor, and No. 12 appeals.

Number 3 transferred its high school students to No. 12, in the manner prescribed by law, and No. 12 sent its school busses into No. 3's territory to pick up the transferred students. No. 3 maintained a grade school, and when the transfer to No. 12 of several of the grade school students resident in No. 3 was sought, No. 3 successfully opposed the proposed transfer. The parents of these children then entered into an agreement with No. 12 for these children to attend the grade school of No. 12, for which the parents were to pay tuition. One of the busses sent into No. 3 by No. 12, as aforesaid, also picked up the grade school children and hauled them to and from school in No. 12. No. 3 seeks to enjoin No. 12 from receiving these students, and to prevent No. 12 from transporting them.

There is not involved in this action any question of financial responsibility of No. 3 to No. 12, for it seems admitted that the parents of the students are willingly paying the tuition to No. 12, and insist upon their rights to do so, and insist upon the right of No. 12 to admit their children into its school system, and to transport them.

No. 3 introduced evidence of the effect upon its classification and financial status by the loss of attendance of these students, and both sides attempted to enlarge the scope of the hearing. However, the trial judge took the view that there was but one question, and we quote him thereon, "* * * the primary question is whether or not it is legal for children living in one school district to be permitted to attend school in another district,—when they haven't transferred to it," and again:

"Gentlemen, as I view this case,—the view the court takes of this case is that under our school laws children situated as the children in controversy in this case are situated, may not be permitted to attend school in adjoining districts, unless they are legally and regularly transferred by action of the county superintendent in connection with the action of the school boards in the two districts."

And in the journal entry of judgment:

"The court further finds that * * * are grade school children, living within the plaintiff district; that application was made to the county superintendent for the trans-

fer of said named children to the defendant school district, but such transfer was denied by the county superintendent, but said children are being picked up by trucks of defendant within plaintiff's district and hauled on said defendant's conveyance or transportation to the defendant school district, with the consent of the defendant school district and the other defendants herein and are attending school in the defendant school district with the consent of the defendant school district and without any objection on the part of its officers or taxpayers therein.

"The court further finds that the plaintiff school district offers the same courses of work as the defendant school district in the same grades.

"From the foregoing findings of fact the court finds as a matter of law that it is the duty of the hereinabove named children to attend school for the scholastic year 1938-'39, within the plaintiff school district, and that the defendants and each of them should be enjoined and restrained from participating in allowing or permitting said children to attend school for said scholastic year . in defendant school district."

The parties have limited their presentation of the arguments on appeal to this one issue, and we shall likewise limit our consideration. The parties have not discussed the right of No. 3 to maintain the action separately or at length, but have directed their main discussion to the point considered by the court, and we shall do likewise.

Our citizens have spoken emphatically in the Constitution, art. 13, and by numerous statutes upon the subject of common education, and it is elementary that the offer of education of such type is obligatory on the part of the state, and attendance at school on the part of the pupils is compulsory.

The concern with which we have undertaken to foster and encourage education has caused us to say that it is of paramount importance as a public question, and one wherein the public interest transcends private interest. But, despite the high degree of public interest therein, we have not entirely excluded the parents of the children in this state, nor those in loco parentis, from a measure of discretion in the matter.

Section 1, art. 13, Constitution of Oklahoma, provides that the Legislature "shall" establish and maintain a system of free public schools, wherein all of the children of the state "may" be educated. Section 4, of said article, provides that the Legislature "shall" provide for the "compulsory attendance at some public or other school, unless other means of education are provided. * * *"

It is significant that imperative words, words of mandatory duty, are used in prescribing the state's duty, but only permissive words are used with respect to attendance at public schools. Education may be furnished without attendance at any school, public or private. As we pointed out in Oklahoma R. Co. v. St. Joseph's School, 33 Okla. 755, 127 P. 1087, the state's legislative agencies are without authority to require parents to send their children to public schools, if other means of education are furnished.

The question before us is, Has the Legislature made attendance upon a particular public school obligatory when the parents desire to send their children to another public school?

56 C. J. 810-11, sec. 987, and 24 R. C. L. 623-624, sec. 82, state the law generally to be that a school district, maintained by local taxation, is without authority to admit nonresident students upon any terms, unless there is express statutory authority therefor.

There is such statutory authority in this state. Section 6813, O. S. 1931, 70 Okla. St. Ann. § 116, reads: "The district board shall have power to admit scholars from adjoining districts, provided the said pupils shall pay a tuition fee. * * *" This section was adopted in 1913, and has been a part of our statute since. No one seems to have questioned the power by court action heretofore, and it seems to us that the quoted statute is as clear and comprehensive as need be to confer the power.

It seems to us that if No. 3 could prevent the attendance of these pupils at an adjoining school district, it could prevent such pupils attending parochial or private schools, or being educated out of the state or by private tutors.

Since the Legislature has conferred upon school districts the power to receive nonresident students upon a fee basis, we can see no reason for attempting to limit the acts of parents who are exercising a discretion vested in them, by virtue of their relation to their children, by denying them the right to send their children to other public schools if they so desire, and especially so where the desired educational facilities are procured at the expense of the parents.

The Legislature has conferred the power upon school districts to transport nonresi-

dent students into the districts to attend its schools. 70 Okla. St. Ann. § 1192, ch. 205, S. L. 1933, § 2.

No. 3 contends that the class of students that may be so transferred is limited to those legally transferred. It is true that terms so implying the limitation are used, but there is other language implying that right to transport is limited to high school students, and there is still other language, as by the use of the term "tuition" in addition to transfer fees, that would imply nontransferred students as well as those legally transferred. The title to the act is sufficiently broad to cover all nonresident students, and the use of varying terms in the body of the act leads us to believe that no such limitation as No. 3 asserts was intended.

There is a limitation in this section upon the right of school districts to send busses beyond its limits to gather students, that is financial. Such districts may not transport nonresident students at a cost in excess of the "transfer fees or tuition secured from such transferred child" nor under any circumstances if such transportation entails additional expense or taxation upon the district. There is no contention or showing herein on this point.

Another limitation is contained in 70 Okla. St. Ann. § 1193, ch. 205, § 3, S. L. 1933. This forbids furnishing such transportation when it conflicts with transportation furnished by the resident district. No contention is made on this point.

The whole burden of the complaint as argued on this appeal is the absence of authority in the premises on the part of No. 12 to receive students from No. 3, in the absence of legal transfer, and the lack of authority to transport is tied in with that argument.

For the reasons stated, we think the trial court erred in holding that nontransferred grade school students resident in No. 3 could not legally attend school in No. 12, and that No. 12 could not receive or transport them.

The judgment is reversed, with directions to dismiss the plaintiff's action, all at the plaintiff's cost.

Reversed, with directions to dismiss.

RILEY, HURST, DAVISON, and DANNER, JJ., concur.