## MIKE VOEGELI v. STATE.
### No. A-10095. Jan. 6, 1943.
### (133 P. 2d 219.)

Melton, McElroy & Vaughn, of Chickasha, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant, Mike Voegeli, was charged by information filed in the county court of Grady county with the crime of laying out poison, was tried, convicted and sentenced to pay a fine of $25 and costs, and has appealed.

An extensive brief has been filed on behalf of the defendant in which he presents 12 assignments of error. Under the view which we have taken of this case it is only necessary to consider one of these propositions in order to dispose of this appeal.

It is contended that the court erred in overruling the demurrer of the defendant to the state's evidence.

In order to properly discuss this question it is necessary to give a brief review of the evidence presented by the state. The defendant is a farmer who lived about one mile north of Chickasha. About two miles from his home place he owned another farm on which he kept a number of sheep. In the month of December, 1940, a large number of defendant's sheep were killed by dogs or coyotes. There were no houses on this 160-acre tract where the sheep were kept. On the night of January 1, 1941, five or six men were out with a pack of hounds purportedly chasing coyotes. About 1 a. m. these parties went through the barbed wire fence which surrounds the Voegeli land where the sheep were kept, and in about

the center of the farm the hunters stopped to rest and warm. While they were there at the campfire some of the dogs came in from hunting and appeared to be sick. Four or five of them died at that time and one or two others died a short while later. The next morning the owners of the dogs notified the sheriff of Grady county, and together with him went over to the defendant's premises where the dogs had died. A search by the sheriff disclosed a dead sheep not far from where the hunters had stopped the previous night. While they were making their investigation the defendant appeared and admitted that he had placed strychnine in the dead sheep for the purpose of killing the coyotes or dogs or whatever had been killing his sheep.

It is undisputed that the parties took their dogs onto the Voegeli premises without his knowledge or consent although there is some testimony in the record by one of the hunters that in June, 1940, and in October, 1940, he had talked to defendant about the coyotes killing his sheep. When questioned concerning the first conversation, the record discloses the following:

"Q. Just tell the conversation, just tell what was said. A. We were talking about the wolves killing the sheep and about running the dogs and Mr. Voegeli made the remark that he would be glad for us to come in there and if we would let him know one of the boys would go with us and help us."

As to the conversation in October the witness testified:

"He just said if we would let him know he and the boys would help get rid of the wolves."

All of the hunters who testified admitted that they did not mention to the defendant at the time they entered his premises on the night in question that they were going

to enter his land, and so far as they knew he had no knowledge of their presence. The witness Estes, who testified as to the conversation had with the defendant, admitted on cross-examination that the conversation which he detailed occurred with defendant at the farm of defendant's son, Raymond Voegeli. Although the state made no effort in the testimony of the witnesses in chief to prove the exact location of the dead sheep on defendant's premises, the defendant, through cross-examination of his counsel, showed by the witnesses that the sheep was about 75 yards north of the place where the hunters had stopped on the night in question, which would place the sheep in about the center of the 160-acre tract of land. It was also brought out upon cross-examination of one of the state's witnesses that the hunters, while making their investigation as to the circumstances surrounding the death of their hound dogs, had gone to the farmer who lived closest to where the sheep's carcass was found, which was about one-half mile distant, and were informed by this farmer that he had his dog locked up for the reason that Voegeli had told him that he had placed poison on the premises.

The statute in question upon which this prosecution is based is section 2440, O. S. 1931, 21 O. S. 1941 § 1197, and is as follows:

"Whoever shall, except in a safe place on his own premises, lay out strychnine or other poison, is guilty of a misdemeanor."

It was the theory of the state upon which the prosecution was based, and which theory was still urged upon appeal in the brief filed by the state herein, that where it is once shown by the state that the defendant has laid out poison, then it is incumbent upon the defendant to show that the poison was laid in a safe place on his own

premises. The court in substance so advised the jury in instruction No. 6 wherein he stated:

"* * * if you further find and believe from the evidence that the defendant, Mike Voegeli, did lay out poison upon his own premises, in a safe place, then and in that event it is your duty to acquit him."

Counsel for the state rely for a conviction chiefly upon the opinion of our Supreme Court in the case of Midland Valley R. Co. v. Rippe, 61 Okla. 314, 161 P. 233, in which the court stated:

"Where a poisonous compound is kept upon the right of way of a railroad company, it is its duty to keep such poisonous compound in a safe place, and whether or not the place in which such poisonous compound is kept is a safe place is a question of fact for the jury.

"While a railroad company is not required to fence its right of way at depots and crossings, it is its duty to properly fence or otherwise so guard a poisonous compound kept upon its right of way as not to leave the same accessible to trespassing cattle."

That case was a civil action for damages brought against the railroad company for the loss of some cattle alleged to have been caused by their drinking poisonous water which was negligently allowed to escape by the company from a dipping vat on the right of way of the company adjacent to the land of plaintiff.

We think it is sufficient answer to the contention of the state to remark that there is a great distinction between actions of a person which might cause him to become civilly liable for damages for injuries which his negligence has caused and those cases where his actions are criminal in nature. In the civil case a question of negligence arises, and in determining negligence in cases such as the one at bar, the courts follow the rule that persons using poisonous substances are required to use

the utmost care to prevent injury and to adopt every known safeguard. The burden is on the plaintiff in a civil action to prove his case by preponderance of the evidence. In a criminal action the burden of proof is upon the state to prove each and every element of the offense charged, and under the statute herein the state must prove beyond a reasonable doubt that defendant did in Grady county lay out poison, and if it is shown that the poison was laid out on his own premises, the burden is still upon the state to show that the place where the poison was laid was an unsafe place. This burden may be met by showing the lay of the land, its proximity to human habitation, whether concealed or easily found, and by many other factors which might enter into the question as to whether the poison was laid in a safe place.

After the state, by its proof, has shown that the poison was laid in an unsafe place on the defendant's premises, it then becomes a question of fact for the jury to determine whether the place where the poison was laid was a safe place in accordance with the statute.

Here the state proved that poison had been placed in a sheep on defendant's premises, and that certain dogs had eaten of the dead sheep and died. In the view which we take of this statute, no presumption arises that the poison was in an unsafe place by reason of the fact that the dogs were killed. This evidence was admissible as a circumstance which, if the state had proved other circumstances, would have been sufficient to submit to the jury the question as to whether the poison was in a safe place, but the burden never shifts to the defendant under this statute to show that the poison was placed in a safe place. He may, of course, after the state has made a prima facie case, in his own defense, as was done herein, show by witnesses and by circumstances that the place where the

poison was laid was a safe place, giving due consideration to the locality, the distance from human habitation, its likelihood to affect persons or domestic animals or' property which might come upon said premises.

The defendant, in his own behalf, testified that he went to the county attorney's office and discussed with the assistant county attorney the question as to what he should do about the killing of his sheep and as to whether he would be permitted to place poison on his place to kill the coyotes or dogs which were causing the damage. That the assistant county attorney read him the statute under which this prosecution was instituted and advised him that if he placed any poison on his own premises in a safe place that it would not be a violation of the law. That pursuant to this advice which he received from the assistant county attorney, he placed the poison in the carcass of one of the sheep which had been killed and left the carcass in as near the center of the uninhabited 160-acre tract of land as he could place it. That only one of the farmers who lived close to the tract owned a dog and he went to him and advised him that he had placed the poison in the sheep so that the farmer could keep his dog tied and prevent it from getting poisoned. That he did not know that the hunters had been running their dogs on his land or he would have been glad to have advised them that he had put out the poison.

This case was prosecuted on the wrong theory. At no place in the record did counsel for the state elicit from the witnesses for the state testimony as to the location of the poison, but such testimony as was shown in the evidence of the state was brought out on cross-examination by defendant's counsel, the state apparently relying upon the fact that they had proved defendant put out

strychnine and that dogs died as a result of eating the poisoned sheep.

In the case of Larrimore v. American National Ins. Co., 184 Okla. 614, 89 P. 2d 340, 341, our Supreme Court defined the term "safe place" as prescribed by the statute here in question, insofar as it was applicable to civil cases for damages. It is therein stated:

"The 'safe place' prescribed by section 2440, O. S. 1931, 21 Okla. St. Ann. § 1197 (making a misdemeanor of the laying out of strychnine or other poison 'except in a safe place on his own premises'), means a safe place in regard to the substance's character as poison; that is, where it would not be likely to poison people or such animals as are within the protection of the law."

It is further stated in the first, second, and third syllabus paragraphs of said case:

"Violation of section 2440, O. S. 1931, 21 Okla. St. Ann. § 1197 (providing that whoever shall lay out strychnine or other poison, except in a safe place on his own premises, is guilty of a misdemeanor), does not render the defendant negligent per se in an action by one who was injured solely by an explosion of said poison.

"It is not enough for a plaintiff to show that the defendant neglected a duty imposed by statute. He must go further and show that his injury was caused by his exposure to a hazard from which it was the purpose of the statute to protect him.

"One who does an unlawful act is not thereby placed outside of the protection of the law, but to have this effect the unlawful act must have some casual connection with the injury complained of."

Under instruction No. 6, above quoted, the jury was required to believe that the defendant had placed the poison in a safe place before they could return a verdict of acquittal when they should have been advised that no presumption of guilt attaches to the fact that defendant

has laid out poison on his own premises, but that the burden of proof was upon the state to prove beyond a reasonable doubt that the place where the poison was laid was an unsafe place within the meaning of the statute.

It is our conclusion that the trial court erred in not sustaining the demurrer to the evidence of the state and in refusing to advise the jury to return a verdict of not guilty at the close of the state's evidence for the reason that the state made no showing that the poison laid out by the defendant on his own premises was in an unsafe place, and that no sufficient facts or circumstances were detailed by the witnesses which would have justified the court in submitting this issue to the jury for their determination as to whether the place where the poison was laid was an unsafe place within the meaning of the statute.

For the reasons hereinabove stated, the judgment of the county court of Grady county is reversed, with instructions to discharge the defendant.

BAREFOOT, P. J., and DOYLE, J., concur.