Roy SHEPPARD and Desa Sheppard, Plaintiffs in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12376.

Criminal Court of Appeals of Oklahoma.

Jan. 9, 1957.

Harley Van Cleave, Raymond B. Thomas, Charles C. Liebler, Tulsa, for plaintiffs in error.

J. Howard Edmondson, County Atty., Jack D. Jones, Rooney McInerney, Assts. County Atty., Tulsa County, Tulsa, for defendant in error.

POWELL, Judge.

Roy Sheppard and Desa Sheppard, husband and wife, plaintiffs in error and hereinafter referred to as defendants, were charged in the court of common pleas of

Tulsa County with the violation of the compulsory education laws, were tried before a jury, convicted and their punishment fixed by the jury at a fine of $25. Appeal to this court has been duly perfected.

The information was filed January 19, 1956. We hereinafter set out the charging part, with a later amendment by interlineation shown in Italics and parenthesis, as follows:

"* * * that on the 16th day of January, A. D. 1956, and prior to the filing of this information in Tulsa County, State of Oklahoma, Roy Sheppard and Desa Sheppard, et ux, in said county, and within the jurisdiction of this court, did unlawfully, wilfully, wrongfully and knowingly, neglect and refuse to compel one Rose Mary Sheppard, age 8 years and Roy Gary Sheppard, age 8 years, to attend a public, private or parochial school (*or provide other means of education for the full term the schools of the district are in session*) the said defendants being then and there the parents of the said Rose Mary Sheppard and Roy Gary Sheppard, as aforesaid, contrary to the form of the statutes in such case made and provided, and against the peace and dignity of the State."

The record discloses that on January 20, 1956, defendants and counsel appeared in open court and defendants waived time to plead and entered their pleas of not guilty. On February 21, 1956, the case came on for trial and a jury was selected, and the court then permitted the county attorney to amend the information by interlineation in the respect heretofore mentioned and set out. Counsel for the defendants asked leave to withdraw the pleas of not guilty, in order to file a motion to quash. The motion was overruled and defendants reentered pleas of not guilty to the information as amended, and the case was continued until February 23, 1956, for trial.

As to the amendment of the complaint, the court pointed out to counsel for the defendants at the time of amendment that the necessary allegation had been developed

by counsel in their voir dire examination of jurors; that is, the members of the jury were asked individually whether, if the court instructed them that if the equivalent of education were provided (other than the education in public schools) such would be sufficient, if they would follow such instructions.

The court said:

"I should say, in permitting this amendment, I am taking into consideration that the defendant has indicated that his defense would be that other means of education were provided, and also taking into consideration that there is going to be a period of a day lapse between now and the time the trial of the case is conducted, and, of course, it is apparent from the record that no evidence has been adduced at this time, and no opening statements have been made by either the State or defendant."

Counsel for defendants then moved that the information be quashed in that Roy V. Sheldon, the complainant who verified the information was not the proper person to sign such complaint as provided by the statutes. On this point, Roy V. Sheldon was called as a witness by counsel for the defense, and testified out of the hearing of the jury.

Witness said that he was employed in the Tulsa Public School System, independent school district No. 1, as a visiting teacher; that Herschell Edwards was supervisor of census and attendance. He said that he was assigned by the superintendent of schools as an assistant to the supervisor of census and attendance and worked indirectly under his supervision. Witness said, however, that he was not classified with the board of education as an assistant to the supervisor of census and attendance. Witness admitted that he filed the complaint against defendants on his own initiative without consultation with Mr. Edwards, supervisor of census and attendance, or any of his assistants. Witness admitted that he had not received authority directly from the supervisor of census and attend·

ance to file complaints as in this case. He said that his authority was from the assistant superintendent of schools.

The court stated that he would let the record show that defendants had withdrawn their pleas of guilty in order to present the motion to quash. Apparently the court considered the information as amended as well as the question of the verification by Roy V. Sheldon. The motion to quash was overruled. This is assigned as error.

The first question is whether or not the court erred in permitting the information to be amended instanter by interlineation following the selection of the jury on January 21, 1956. Apparently the county attorney discovered from the questions counsel for defendants asked prospective jurors, that he had left out an essential allegation in his information. A demurrer had not been entered to the information whereby the court and counsel for the State would have learned of the defect, and an amendment could have been allowed prior to entry of plea.

The information was filed under authority of 70 O.S.A. § 10-10, the pertinent portions reading:

"It shall be unlawful for a parent, guardian, custodian or other person having control of a child who is over the age of seven (7) years and under the age of eighteen (18) years, and who has not finished four (4) years of high school work, to neglect or refuse to cause or compel such child to attend and comply with the rules of some public, private or other school, unless other means of education are provided for the full term the schools of the district are in session * * *. It shall be the duty of the supervisor of school census and attendance to enforce the provisions of this Section. Any parent, guardian, custodian, child or other person violating any of the provisions of this Section shall be guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not more than Fifty Dollars ($50.00), or by imprisonment in the county jail for not more than ten (10) days, or by both such fine and imprisonment." As amended 1951.

The statute as it existed in 1922 in substance provided, § 7930, R.L.1910, as amended by § 1, Chap. 59, S.L.1919, that it should be unlawful for any parent to neglect or refuse to cause his child or children to attend some public or private school, or other school, unless other means of education would be provided, for a period of two-thirds of the time the public school of the district of his residence was in session. In Wright v. State, 1922, 21 Okl.Cr. 430, 209 P. 179, the information charged that E. D. Wright neglected, refused and failed to compel his minor child, Felicia Wright, to attend the public school of his district, or any private school, for two-thirds of the time the public school was in session. This court held, paragraph 2 of the syllabus:

"Where a negative averment is an essential and material part of the description of an offense, such negative averment should be made and sustained by the evidence." And see, in this connection, 153 A.L.R. 1250, note.

Judge Bessey in the body of the opinion said:

"This information was defective, in that it failed to charge, negatively, that the child attended no other school, and that no other means of education was provided, as incorporated in the statutory definition of the offense. These were not mere matters of defense; they constitute an essential element of the offense, as defined by statute. Where a negative averment is an essential and material part of the description of an offense, such negative averment must be made."

22 O.S.1951, § 304 provides:

"An information may be amended in matter of substance or form at any time before the defendant pleads, without leave, and may be amended after

plea on order of the court where the same can be done without material prejudice to the right of the defendant; no amendment shall cause any delay of the trial, unless for good cause shown by affidavit."

In many cases this court has held that information charging misdemeanor may be amended during course of trial, where amendment can be made without prejudice to accused. Knopp v. State, 59 Okl.Cr. 143, 54 P.2d 1193; Henthorne v. State, 35 Okl.Cr. 197, 249 P. 429, and cases cited. For other cases with varying fact situations where the principle has been applied, see: Chandler v. State, 3 Okl.Cr. 254, 105 P. 375, 107 P. 735; Rich v. State, 46 Okl. Cr. 242, 284 P. 903, and cases cited.

We do not discover from the record that the amendment of the information in the respect set out materially prejudiced the rights of the defendants. The contention that if the amendment had been prior to plea counsel could have more properly qualified the jury is fully answered by the statement of the trial court heretofore quoted. It would appear that counsel was aware of the deficiency in the information but qualified the jury as if the allegation in question had not been omitted. We therefore find no error in the court permitting the amendment.

■■ It is next contended "The charge was not brought by an officer charged to enforce the law which the information purports to charge was violated." This contention is based on that portion of 70 O.S. A. § 10–10, heretofore quoted, and which reads: "It shall be the duty of the supervisor of school census and attendance to enforce the provisions of this Section." It is argued that no one but the supervisor of school census and attendance or someone acting for him where there would be consultation, could cause a charge to be filed.

There can be no doubt but that the duty in the respect mentioned was by the legislature placed squarely on the official designated. And as a matter of efficient conduct of the office it could be expected, and it would be imperative that some hard and fast policy be promulgated, and known and recognized by all officials in the particular school district.

Nevertheless, the prosecution points out that the statute in question by its language in so many words, while making it the duty of the supervisor of school census and attendance to enforce the provisions of the act, does not restrict the enforcement of the act to him alone. It is also said that the fact of the duty imposed on such supervisor "cannot be carried to the unwise conclusion that only the supervisor of census and attendance can verify an information charging a violation of this section." 22 O.S.A. § 303 is cited, and it reads:

"The county attorney shall subscribe his name to informations filed in the county, superior or district court and indorse thereon the names of the witnesses known to him at the time of filing the same. He shall also indorse thereon the names of such other witnesses as may afterwards become known to him, at such time as the court may by rule prescribe. All informations shall be verified by the oath of the prosecuting attorney, complainant or some other person." See in this connection 22 O.S.A. § 258(3).

It is made to appear that there is legislation in some states authorizing violations of the school attendance laws to be prosecuted exclusively by specific officials, but such is not the case in Oklahoma.

By orderly procedure, in absence of some specific statute to the contrary, it is the duty of the county attorney to listen to complaints on the part of persons advising him of alleged law violations, and he then decides whether or not the law has been violated and what charge, if any, should be filed. When he approves an information it may not be set aside on the ground that the person verifying it did not have positive knowledge of the acts set forth in the information where the verification is positive and regular. Munn v. State,

5 Okl.Cr. 245, 114 P. 272; Moss v. State, 4 Okl.Cr. 247, 111 P. 950.

The principle involved in the question here presented has been treated in some detail in Perry v. State, 84 Okl.Cr. 211, 181 P.2d 280. There the court cited State v. Snelson, 13 Okl.Cr. 88, 162 P. 444, where it was said:

"The statutes of Oklahoma make it the duty of county attorneys to guard the interests of the state and public, and specifically confer authority upon them to commence criminal actions on behalf of the state.

"Held that the provisions of section 8099, R.L.1910 [74 O.S.1951 § 179] making it the duty of the commissioner of charities and corrections to prosecute certain offenders, does not confer additional authority upon the commissioner of charities and corrections, but only imposes a duty upon him, to prosecute such offenders through the regular channels existing for the prosecution of criminal offenders."

We now come to the main issue in the within case. It is argued by defendants that the trial court erred in overruling defendants' demurrer to the evidence at the conclusion of the State's case in chief.

We have decided under authority of Wright v. State, supra, 21 Okl.Cr. 430, 209 P. 179, that where a negative averment is an essential and material part of the description of an offense, such negative averment should be made and sustained by the evidence. Therefore, by 70 O.S.A. § 10–10, already quoted, the elements of the crime appear to be: (1) that the defendant is a parent, guardian, custodian or has control of a child or children who (2) are over 7 and under 18 years of age; (3) neglect or refusal of defendants to cause child or children to attend some public, private or other school unless other means of education are furnished for (4) the full term the schools of the district are in session.

Before we commence a consideration of the evidence on the part of the State, to determine whether or not it made out a prima facie case against the defendants, there are some established principles from our courts that should be kept in mind.

See School Board District No. 18, Garvin County v. Thompson, 24 Okl. 1, 103 P. 578, 24 L.R.A.,N.S., 221, where Chief Justice Kane, speaking for the Supreme Court said:

"At common law the principal duties of parents to their legitimate children consisted in their maintenance, their protection, and their education. While the municipal laws took care to enforce these duties, yet it was presumed that the natural love and affection implanted by Providence in the breast of every parent had done so more effectually than any law. For this reason the parent, and especially the father, was vested with supreme control over the child, including its education. Except where modified by statute, that authority still exists."

See also Consolidated School District No. 12 v. Union Graded School District No. 3, 185 Okl. 485, 94 P.2d 549, 550, where Chief Justice Bayless in the body of the opinion said:

"Our citizens have spoken emphatically in the Constitution, Art. XIII, Okl.St.Ann., and by numerous statutes upon the subject of common education, and it is elementary that the offer of education of such type is obligatory on the part of the state, and attendance at school on the part of the pupils is compulsory.

"The concern with which we have undertaken to foster and encourage education has caused us to say that it is of paramount importance as a public question, and one wherein the public interest transcends private interest. But, despite the high degree of public interest therein, we have not entirely excluded the parents of the children in this state, nor those in loco parentis,

from a measure of discretion in the matter.

"Section 1, Art. 13, Constitution of Oklahoma provides that the Legislature 'shall' establish and maintain a system of free public schools, wherein all of the children of the state 'may' be educated. Section 4, of said Article, provides that the Legislature 'shall' provide for the 'compulsory attendance at some public or other school, unless other means of education are provided * * *.'

"It is significant that imperative words, words of mandatory duty, are used in prescribing the state's duty, but only permissive words are used with respect to attendance at public schools. Education may be furnished without attendance at any school, public or private. As we pointed out in Oklahoma R. Co. v. St. Joseph's Parochial School, 33 Okl. 755, 127 P. 1087, the state's legislative agencies are without authority to require parents to send their children to public schools, if other means of education are furnished."

These principles have been approved by the Supreme Court of the United States. See Pierce v. Society of Sisters of Holy Names, 45 S.Ct. 571, 573, 268 U.S. 510, 534, 69 L.Ed. 1078.

The Criminal Court of Appeals has said that it is fundamental that it is incumbent upon the prosecution to establish each and every material element of the crime charged and every fact and circumstance essential to the guilt of the accused. Crouse v. State, 39 Okl.Cr. 127, 263 P. 681; Voegeli v. State, 75 Okl.Cr. 420, 133 P.2d 219; Brady v. State, 91 Okl.Cr. 367, 219 P.2d 267; 22 C.J.S., Criminal Law, § 566; 20 Am.Jur., § 149; 153 A.L.R. 1250, note.

As pointed out in Cole v. State, 70 Okl. Cr. 109, 104 P.2d 981, 984:

" * * * evidence on the part of the state should be of such character as to overcome the prima facie presumption of innocence. If the evidence raises a mere supposition, or, admitting all that it tends to prove, the defendant's guilt is left doubtful, or defendant upon mere supposition, surmise or suspicion, the court should advise the jury to acquit the defendant. * * * "

And it has been held that under such circumstances, to fail to sustain a demurrer interposed where a prima facie case is not made, constitutes error. Jackson v. State, 71 Okl.Cr. 258, 110 P.2d 929; McLaughlin v. State, 18 Okl.Cr. 137, 193 P.2d 1010, 1012.

It is conceded by counsel for the defendants that the State in an effort to make out a case established (1) that the defendants were the parents of twin children, Rose Mary Sheppard and Roy Gary Sheppard; (2) that the children were over seven and under eighteen years of age, being eight years old. But defendants deny that the state produced any evidence to show that the defendants failed for the periods that their children did not attend public school to furnish said children "other means of education, as provided by Sec. 10-10 of Tit. 70. O.S.A."

The State to establish its case used four witnesses.

Ruth Beller testified that she was a teacher at the Robertson School, Tulsa; that she knew Roy Sheppard and Rose Mary Sheppard; that she was their homeroom teacher when they were enrolled in that school in the third grade; that she taught them about two and a half hours per school day; reading, writing, spelling, arithmetic, health and language; that they spent about the same amount of time in other classes: gym, auditorium, library, science and music. Witness stated that her records showed that the Sheppard children enrolled in school on September 6, 1955 and were present seven days; that for the balance of the quarter, which contained a total of 45 days, they were absent; that for the second quarter Rose Mary was present 33 days out of 43 days, and that Roy was present 27 out of 43

days; that neither of the children had attended school the third quarter, which commenced January 20, 1956.

Witness said that she had no trouble with the children in the school room when they attended; that the boy did get in a scuffle with other boys on the school grounds and was brought to her room; that he seemed to crave personal attention and wanted to be a leader among children on the school grounds. She said that she had never discussed the absence of the children with Mr. and Mrs. Sheppard, the defendants; she said that she did not know of her own knowledge whether the Sheppard children were receiving any education at any place; that all she knew they were not in the Robertson School. She classed the Sheppard children of average intelligence. She did not know how they got along in their work under other teachers. Witness was of the opinion that the children were "behind with their class work." On cross examination witness admitted that she had never given the Sheppard children tests. Witness was further questioned and answered as follows:

"Q. Now, how did you determine that these Sheppard children hadn't received any education outside of the school room during the time they were absent from the period until they returned the second time, how did you determine it? A. Well, my own opinion would be, if they had had the same instructions that we give them in school, they would know the same things as the folks in the room.

"Q. They would have had to study the same books to have done the same things that you were teaching there, is that right? A. Well, they wouldn't have to read the same reader.

"Q. Did you give them any tests when they came back to make that decision of yours? A. No. The tests would be in a reading group, whether or not they knew phonics or knew words or how to attack words, was what I gave them.

"Q. You teach them phonics. Were the children not up to normal in their spelling? A. Oh, they could learn to memorize words, they have that ability.

"Q. Were they not up to the standards in the class of reading? A. Well, they were—I can't say that—I say they weren't as good readers as I had in the group that they were in.

"Q. How many students do you have in your class, in your home room class? A. In their home room class was 34."

Witness said that she allowed twenty minutes to a reading group per day, with eleven to twelve students to a group, so that her personal attention to a particular child was limited to about one and a half minutes per day.

Clyde Morton testified that he was principal of the Robertson School. He said that the residence of the Sheppard children was within his school district, but he did not know whether or not the Sheppard children were receiving any instruction when they were not in school of which he was principal. On cross-examination he testified:

"Q. Mr. Morton, did you ask either Mr. and Mrs. Sheppard whether their children were attending any school, or whether they were receiving any other form of education? A. I did not.

"Q. They just did not tell you whether they were or not, is that correct? A. They did not tell me."

Witness had never observed Rose Mary and Roy Sheppard in the class room, though he had observed the class as a whole. He seemed to think it unusual that Roy would let his fists fly when other boys scuffled with him, though he admitted that such was true with many little boys. Witness had never heard the Sheppard children recite and said that he did not know whether or not either of the children attended any other school, public or private, during the times they were absent.

Roy V. Sheldon testified as to his occupation that he had two titles: one as assistant counsellor assigned to him by Dr. Mason of the Tulsa public schools, and also he was assistant supervisor of attendance and had the responsibility of giving written notice to parents of non-attendance of their children. He produced a copy of a letter sent to the defendants dated November 7, 1955, notifying them of the absence of their children from school and that a complaint would be filed against them if the children were not returned to some public or private school within five days. Witness said that prior to sending this notice and on October 10, 1955, he had a conversation with Mrs. Sheppard about the children. He told Mrs. Sheppard that if she would employ a Miss Brooks, or a Mrs. Elliott, he would not file charges, but admitted he knew nothing of the qualifications of either, except that Mrs. Elliott had been doing tutoring for several years. Witness said that he talked with Mrs. Sheppard on January 19 when she told him that she was teaching the children herself. Said he: "I questioned her about the absence of the children, and she said that she was taking the children out and teaching them herself, and I told her that in this case there was nothing left for me to do but file an action against them." He further testified:

"Q. Did you ascertain or determine, of your own knowledge, whether they were being taught by her or anyone else, or receiving any form of education? A. No, I didn't ascertain, she told me she was teaching them, that is all I know.

"Q. She told you that she was teaching and you went ahead and filed this information? A. Yes, sir."

This ended the evidence for the State, except the parties stipulated to the ages of the twin Sheppard children as being eight years.

Counsel for defendants interposed a demurrer to the evidence of the State "for the reason that all said evidence and all inferences that may reasonably be drawn therefrom is insufficient to rebut the presumption of innocence of the defendants, and to make a prima facie case."

The court overruled the demurrer, to which defendants excepted, and thereupon the defendant Desa Sheppard testified and claimed that her children had been taught personally by herself for five days per week, five hours a day, ever since they had been out of school; that the instruction had been given in her dining room. She said that she taught them Bible study, reading, writing, arithmetic and drills; that her older daughter played the piano for drills, that she taught them daily routine of brushing the teeth, talking about cleanliness of the body, general health and value of different foods, and science; that she had the books they had used in school. She said that in January prior to the charges being filed she set up a regular school room in a building on the same lot her home was on, with desk, globe, encyclopedias, etc. Witness further testified concerning her qualifications and about her special instruction given three of her older children who won a number of championship certificates, city, state and national, in spelling, and won other awards. She offered in evidence as bearing on her qualifications as a teacher exhibits 3 to 38. The court refused to admit these exhibits into evidence, based on the theory that the certificates would be hearsay unless the teacher or others who signed the certificates were personally present to testify. This was assigned as error. Witness further testified that the reason she took her twins out of school in the first year was by fact that the boy, Roy, had been so frightened by "a teacher [who] grabbed him by the hair of the head and slammed him around against a brick wall, and the principal refused to reprimand—he upheld the teacher in such manner of discipline, and I taught him the first year." It was defendant's idea that her children required more personal attention and instruction than they had been getting in the public schools.

Rowena Sheppard, an adult daughter, testified to corroborate the testimony of her mother.

Defendants at the close of all the evidence re-interposed their demurrer on the ground that the state had not made out a prima facie case, and the court was asked to direct a verdict on behalf of the defendants.

The court said: "Well, frankly, I have some question about this evidence", but he proceeded to overrule the demurrer.

As we view the case, it must turn on the question of whether or not the State made out a prima facie case in the first instance.

The statute under which the case was prosecuted, 70 O.S.A. § 10–10, makes it an offense to keep a child out of public school only where it is not enrolled in some private or other school or "unless other means of education are provided for the full term the schools of the district are in session."

We have seen from the case of Wright v. State, supra, which construes the statute in question, that it was not only necessary that it be charged in the information that the children failed to attend the Robertson or other school and that no other means of education was provided, but that it was incumbent on the State to offer proof to such effect. In Wright v. State, supra, it was said, as we have seen [21 Okl.Cr. 430, 209 P. 180]:

"Where a negative averment is an essential and material part of the description of an offense, such negative averment must be made."

The State offered proof to show that the Sheppard children did not attend the Robertson School, where they had been enrolled at the beginning of the school year, but had subsequently been withdrawn, and had not been enrolled in another school; but apparently no effort was made to determine whether "other means of education was provided" and if so whether or not it was adequate and comparable to the instruction given in public school. Sufficient information could have been obtained by questioning the parents of the children concerning these questions, and even the children and other persons who might have personal knowledge, to have satisfied the school officials and the county attorney whether other means of education was being actually provided.

If from such investigation it was determined that no other means of education was being provided, or if so, that it was wholly inadequate, then it would have been a simple matter to have made out a prima facie case. Under such circumstances, then, the jury would have been in a position to have considered and weighed such evidence produced by the State along with the testimony produced by the defense that tended to show that the children, while not actually attending public school, were in fact being afforded other means of education. The jury would then determine, under proper instructions, whether the "other means of education provided" was adequate; that is, whether the facilities for the education of the children outside the public school were sufficient, and determine the proficiency and good faith of the instruction provided. Wright v. State, supra.

But here the school authorities and the State seemed to have proceeded on the theory that the requirements of the statute could only be met where the children were not attending public schools to have had them enrolled in some private school. That was the way the information read and would indicate prior to the amendment which took place after the jury was selected. The State had not made its investigation and bottomed its case on the necessity of finding out whether the Sheppard children were receiving means of education other than a public or private school. So no attempt was made to produce evidence in this regard. Each State witness simply answered with reference to this question that they did not know, except Mr. Sheldon did say that in January Mrs. Sheppard told him that she was personally instructing the children. But he made no inquiry as to the period of time each day, the subjects taught, whether for each school day since

the children had been absent, and made no inquiries as to Desa Sheppard's qualifications to teach her third grade children.

For the reasons given, we conclude that the State failed to make out a prima facie case. Therefore, the evidence of the defendant Desa Sheppard and her adult daughter, Rowena Sheppard, as to the course of instruction that was afforded the Sheppard children, qualifications of Desa Sheppard to instruct, etc., could have no bearing on the question of the sufficiency of the State's evidence in the first instance. Scales v. State, Okl.Cr., 270 P.2d 378. It is therefore unnecessary to treat other issues raised concerning the failure of the court to admit certain evidence and alleged error as to certain instructions.

The judgment and sentence is therefore reversed, and the case is remanded with directions to dismiss.

JONES, P. J., and BRETT, J., concur.